JAMES D. RICHARDSON, JR., *Admr., v.* MRS. TABITHA F. VICK *et al.*

(*Nashville.* December Term, 1911.)

1. **CONTRACTS. Procured by fraud are voidable at option of defrauded party, when.**

   It is elementary law, of universal application, that fraud renders all contracts voidable, *ab initio*, at the option of the defrauded party, when diligently exercised, in the absence of intervening rights of innocent third persons, since there is no real assent to the contract, where it was procured by fraud. (*Post, p.* 540.)

2. **SAME. Sales and possession procured by fraudulent representations as to solvency may be disaffirmed, and title and possession regained.**

   Where one has induced another to sell and deliver to him property, on a credit, by false and fraudulent representations of solvency, with the intention of not paying for it, the seller has the right to disaffirm the sale and reinvest in himself the title to the property, and reclaim possession. (*Post, pp.* 540, 541.)

   Cases cited and approved: Belding v. Frankland, 8 Lea, 67; Donaldson v. Farwell, 93 U. S., 632.

3. **SALES. Purchaser's intent not to pay for goods is established by his hopeless insolvency, without actual false representations, when.**

   The fraudulent intent not to pay for property purchased may be deduced from the facts and circumstances, where no actual false representations of solvency are made, as where the purchaser has full knowledge of his insolvency and inability to pay; and false representations of solvency knowingly and purposely made to induce a sale and delivery of goods upon a credit, when the purchaser is hopelessly insolvent, are sufficient

Richardson v. Vick.

to establish the fraudulent intent not to pay for them, because° his condition must necessarily preclude any honest intent to the contrary. (*Post, p.* 541.)

Cases cited and approved: Belding v. Frankland, 8 Lea, 67; Katzenberger v. Leedom, 103 Tenn., 144; Talcott v. Henderson, 31 Ohio St., 162.

4. **SAME. Same. Evidence establishing purchaser's fraudulent intent not to pay for the goods.**

In the seller's suit in disaffirmance of the sale and to recover the goods from the purchaser's administrator, where the purchaser procured the possession of the goods upon a credit sale, by the false representations that he was worth from sixty thousand to seventy thousand dollars, made for that purpose, when he knew that he was hopelessly insolvent, and could not have possibly had any reasonable expectation of making payment, the facts present a strong case for the application of the rule in the preceding headnote, and show the purchaser's fraudulent intent not to pay for the goods. (*Post, pp.* 542, 543.)

5. **SAME. Same. Same. To avoid sale, false representations as to solvency need not be the sole, if material, consideration for credit.**

To avoid a sale, it is not necessary that the purchaser's false representations as to his solvency be the sole and exclusive consideration for the credit, but only that they be a material consideration, without which the credit would probably not have been extended. (*Post, p.* 542.)

Case cited and approved: In re Marco Gany (D. C.), 4 Am. Bankr. Rep., 576, 103 Fed., 930.

6. **SAME. Of goods to firm on the sole credit of one partner and his false and fraudulent representations as to his financial condition is invalid, though the other partner is solvent.**

Where goods were sold and delivered to a firm upon the exclusive credit of the only one of the partners known to the seller, a credit established by previous dealings, and upon his

Richardson v. Vick.

false and fraudulent representations as to his financial condition, made without intention to pay for the goods and to induce the giving of the credit, which was extended exclusively to the partner making such representations, the mere fact that the other partner was solvent does not make the sale valid, especially where, after the dissolution of the firm, the seller released the other partner without any knowledge of their real financial condition; for the seller cannot be bound upon a contract to which his mind did not assent, and which he did not make. (*Post, pp.* 542, 543.)

7. **ADMINISTRATION.** Statute for ratable payment of debts of insolvent decedents does not affect fixed liens.

The statute (section 4065 of Shannon's Code), providing that insolvent estates of decedents shall be divided among the creditors ratably, and that no action, judgment, bill, or note shall have precedence over unliquidated accounts presented and filed, but that all such claims shall be acted upon as being of equal grade, was enacted and intended to abrogate the common law distinctions, between debts due, on account of the character or form of the evidence of the debt, to abolish all rules of priority or preference in the payment of the debts of insolvent decedents, arising from the nature, degree, or dignity of the debt, and, in case of the deficiency of assets, to place all creditors upon the same footing of absolute equality, by compelling a *pro rata* distribution of the assets, and was not intended to affect or impair the liens acquired or fixed upon property of debtors during life, but to secure a ratable division of the assets subject to the payment of general debts. (*Post, pp.* 543, 544.)

Code cited and construed: Sec. 4065 (S.); sec. 3170 (M. & V.); sec. 2326 (T. & S. and 1858).

Cases cited and approved: Rains v. Rainey, 11 Hum., 261; Fields v. Wheatley, 1 Sneed, 354; Winton v. Eldridge, 3 Head, 361; Parchman v. Charlton, 1 Cold., 382; Kinsey v. McDearmon, 5 Cold., 392; Bacchus v. Peters, 85 Tenn., 680.

Richardson v. Vick.

8. **SALES.** Avoided for fraud of vendee vests title and right of possession, and not a mere lien, in the seller, not defeated by suggestion of insolvency of vendee's estate.

The seller of goods delivered to the vendee upon his false and fraudulent representations as to his solvency, made with the intention to obtain credit and not to pay for the goods, may disaffirm the sale and recover the goods, even after the death of the vendee and the suggestion of insolvency of his estate, because, upon such disaffirmance, the title and right of possession of the goods vest in the seller, and not a mere lien upon the goods, either inchoate or fixed. (*Post, pp.* 544, 545.)

9. **SAME.** Avoided for fraud of vendee, and goods recovered after vendee's general assignment or bankruptcy.

Where a sale of goods upon a credit was induced by the buyer's false and fraudulent representations as to his solvency, the seller can recover his property, notwithstanding a valid assignment made to secure general creditors, or the fact that the debtor has been declared a bankrupt. (*Post, pp.* 545, 546.)

Cases cited and approved:   Belding v. Frankland, 8 Lea, 67; Donaldson v. Farwell, 93 U. S., 632; In re Hamilton Furniture Co. (D. C.), 117 Fed., 774.

10. **Same.** Avoided for vendee's fraud, as soon as learned, entitles seller to rescission and recovery of the goods, even after suggestion of insolvency of vendee's estate; no laches.

Where the seller of goods, upon a credit induced by the purchaser's false and fraudulent representations as to his solvency, promptly disaffirmed the sale and brought petition to recover possession, upon his first knowledge of the falsity of such representations and the insolvency of the estate of the deceased purchaser, obtained from the suggestion of the insolvency of his estate by the administrator thereof; such seller is not guilty of laches, and is entitled to a recovery, especially where the rights of no innocent third parties have intervened or attached. (*Post, p.* 546.)

FROM RUTHERFORD.

Appeal from the Chancery Court of Rutherford County.—WALTER S. BEARDEN, Chancellor.

RIDLEY & RICHARDSON, for complainant.

P. D. MADDIN, for Kentucky Wagon & Manufacturing Co. and John Deere Plow Co.

JOHN R. AUST, for Deeds & Hersig Manufacturing Co.

W. H. WILLIAMSON, for Dilkes Bros. Co.

JESSE W. SPARKS, for Allen C. Johnson.

MR. CHIEF JUSTICE SHIELDS delivered the opinion of the Court.

Complainant, Jas. D. Richardson, Jr., administrator of Will A. Vick, deceased, brought this bill against the heirs and creditors of his intestate, in the chancery court of Rutherford county, to have the estate of the intestate there administered as an insolvent estate. The decedent died July 2, 1909. Complainant was appointed and qualified as administrator July 9, 1909, and, having first duly suggested the insolvency of the estate, filed the bill in this cause July 20, 1909. Thereafter the bill was sustained as an insolvent bill, and all creditors enjoined

from proceeding against the estate otherwise than in this cause.

The cause is now before this court upon petitions filed therein August 16, 1909, by the Kentucky Wagon & Manufacturing Company, a corporation, and November 26, 1909, by the Deeds & Hersig Manufacturing Company, a corporation, to review the decree of the chancellor in favor of the petitioners.

The facts charged in the respective petitions of the Kentucky Wagon & Manufacturing Company and the Deeds & Hersig Manufacturing Company, and appearing in the proof, upon which petitioners seek relief, are these:

W. A. Vick was a retail dealer in wagons and other vehicles previous to January 1, 1909, in the city of Murfreesboro. On the day named he formed a partnership with Allen C. Johnson for the purpose of conducting the same business, which continued in existence until June 1, 1909, upon which day it was dissolved, and by the terms of the dissolution Vick agreed to take all the vehicles in stock, and assume and pay all indebtedness of the firm due on account of the purchase of the same. He continued in business until July 2d next, when, as stated above, he died intestate and wholly insolvent; the assets of his estate aggregating less than $10,000, and his indebtedness more than $75,000.

The Kentucky Wagon & Manufacturing Company, previous to January 1, 1909, had consigned vehicles to W. A. Vick, as agent, for sale, and about that day, upon his request, accepted his note for the cost price of five

wagons, which he then had in his warehouse, belonging to the company. While Vick and Johnson were partners, about March 16, 1909, this petitioner sold the firm fifty-two wagons on credit, taking their notes for the purchase money. When Vick & Johnson dissolved partnership, upon the request of Vick, petitioner surrendered the notes of Vick & Johnson, and accepted those of Vick for all the indebtedness due it.

The petitioner Deeds & Hersig Manufacturing Company sold to Vick & Johnson, as partners, twenty-nine vehicles, taking their notes for the purchase money, which upon the dissolution of the firm, were taken up by Vick and his notes accepted in lieu of the same.

When Vick died, all the vehicles purchased from the petitioners were in his warehouse at Murfreesboro, were susceptible of identification, and came to the hand of his administrator, and the several notes given by him for the purchase money were all unpaid.

W. A. Vick, for some years previous to January 1, 1909, had dealt with both petitioners, and had falsely and fraudulently represented to them, respectively, for the purpose of obtaining credit for vehicles purchased, that he was solvent and worth from $60,000 to $70,000 above all his indebtedness. He also made from year to year reports of his financial condition to mercantile agencies of which petitioners were subscribers, for the purpose of obtaining credit, and which he knew would be supplied to and acted upon by petitioners, showing his condition to be as represented to petitioner, which reports were received and acted upon by them. These

representations of the said Vick were false and fraudu-
lent, as he at the time he made them well knew that he
was wholly insolvent, and unable to pay more than ten
to twenty per cent. of his indebtedness.    One of these
statements was made to Deeds & Hersig Manufacturing
Company in January, 1909.    Just previous to the dis-
solution of the partnership between Vick and Johnson,
the former made these representations to both of the
petitioners, and in that way induced them to accept his
notes for those of the firm, and release Johnson, who
was solvent.    They knew nothing of Vick's insolvency
until after his death, and when it was suggested by his
administrator.

The petitioners had not, previous to January 1, 1909,
dealt with Allen C. Johnson, and did not know him or
his financial condition, and in the subsequent dealings
with the firm gave it credit upon the faith of the rep-
resentations made them by Vick of his financial condi-
tion.    Vick was at this time aware of his insolvency,
and knew he could not pay for the property sold
him.

Petitioners, respectively, charge that they were in-
duced to sell and deliver the vehicles sold by the Ken-
tucky Wagon & Manufacturing Company to Vick pre-
vious to January 1, 1909, and those to the firm of Vick
& Johnson after that date on a credit, as stated, and to
accept the individual notes for those of the firm, by the
false and fraudulent representations made by Vick, as
above shown, and that, on account of the fraud thus know-
ingly and deliberately perpetrated upon them, the said

sales were and are voidable, and that they have the right to disaffirm the same and recover their property from the administrator of the said Vick, and for this purpose filed their petitions and prayed for appropriate relief, which was granted them by the chancellor, and this decree complainant now seeks to have reversed by this court.

There is no error in this decree. It is elementary law, of universal application, that fraud renders all contracts voidable, *ab initio*, at the option of the defrauded party, when diligently exercised, in the absence of intervening rights of innocent third parties. Contracts are not binding where the minds of the parties do not meet and assent to their terms, and there is no real assent where the will of one has been controlled, and his assent procured, by deception and fraud. Where this has been done the contract is voidable, and the party defrauded has the right to rescind it and reassert his original *status* and rights.

A common case for the application of this principle is where one had induced another to sell and deliver to him property, on a credit, by false and fraudulent representations of solvency, with the intention of not paying for it. In such cases the vendor has the right to disaffirm the same and reinvest in himself the title to the property and reclaim possession. This court said:

. "It is now settled, both in England and America, that, if a person purchase goods with the fraudulent intention of not paying for them, the vendor may disaffirm the sale, although the goods be delivered, and reinvest

the property in him, and recover them by action against the vendee." *Belding Bros.* v. *Frankland,* 8 Lea, 67, 41 Am. Rep., 630.

The supreme court of the United States has stated the rule in these words:

"The doctrine is now well established by a preponderance of authority that a party  not intending to pay, who, as in this instance, induces the owner to sell him goods on a credit, by fraudulently concealing his insolvency and his intent not to pay for them, is guilty of fraud which entitles the vendor, if no innocent third party has acquired an interest in them, to disaffirm the contract and recover the goods." *Donaldson* v. *Farwell,* 93 U. S., 632, 23 L. Ed., 993.

The fraudulent intent not to pay for the property purchased may be deduced from the facts and circumstances, where no actual false representations of solvency are made, when the purchaser has full knowledge of his insolvent condition and inability to make payment.

And false representations of solvency, knowingly and purposely made to induce the vendor to sell and deliver the goods on a credit, when the purchaser is hopelessly insolvent, are sufficient to establish the fraudulent intent not to pay for them, as his condition must necessarily preclude any honest intent to the contrary. *Belding* v. *Frankland,* supra; *Katzenberger* v. *Leedom Co.,* 103 Tenn., 144, 52 S. W., 35; *Talcott* v. *Henderson,* 31 Ohio St., 162, 27 Am. Rep., 501; Remington on

Bankruptcy, section 1879; Collier on Bankruptcy (8th Ed.), section 1910.

This case presents a strong one for the application of this rule. The petitioners were induced to make the sales of the property sought to be recovered on a credit, and part with the possession of it, by the false representations of W. T. Vick that he was worth from $60,000 to $70,000, made for that purpose when he knew he was hopelessly insolvent, and could not have possibly had any reasonable expectation of making payment; and upon the same representations he fraudulently procured petitioners to release Johnson and take his individual obligations for the purchase money due them. These facts not only establish conclusively the fraudulent intent not to make payment, but fraud in general, which vitiates the contracts of sale.

There is nothing in the suggestion that the firm of Vick & Johnson was solvent, because of the solvency of Johnson. Petitioners sold and delivered their goods exclusively upon the credit of W. A. Vick, established with them by his fraudulent misrepresentations of his financial condition. They had had previous dealings with him, but none with Johnson, and did not know or inquire of his ability to pay, and did not give the credit to him. It is not necessary, to avoid a sale, that the false representations be the sole and exclusive consideration for the credit, but only that they be a material consideration, without which the credit would not probably have been extended. *In re Marco Gany* (D. C.), 4 Am. Banker. Rep., 576, 103 Fed. 930.

The entire relations between petitioners and Vick must be considered. They had been, as stated, dealing with him for several years upon his representations of his solvency. They had made the sales in question solely upon his credit, and finally they released Johnson and accepted him alone for the indebtedness. This last fact shows conclusively that the credit was extended to Vick alone, and was the basis of the sales made. The solvency of Johnson was not considered. To hold the sales valid on this account would be to hold petitioners bound upon a contract to which their minds did not assent, and which they did not make.

Complainant, however, insists that the petitioners lost their right of rescission and reclamation of their property, fraudulently obtained from them, by the suggestion of the insolvency of the estate of W. A. Vick. This contention is based upon the statute in regard to the administration and distribution of the assets of insolvent estates of decedents among creditors (Code, section 3170 [Shannon's Ed., section 4065]), which provides that: "Insolvent estates of deceased persons shall be divided among the creditors ratably, and no action brought, judgment, bill single, or notes of land, shall have precedence over unliquidated accounts presented and filed, authenticated according to law, but all such claims shall be acted upon as being of equal grade."

This statute was enacted for the purpose of abrogating the common-law distinctions of debt due on account of the character or form of the evidence of the debt. The

intention of the general assembly was to abolish all rules of priority or preference in the payment of the debts of insolvent deceased debtors arising from the nature, degree, or dignity of the debt, and in case of deficiency of assets, to place all creditors upon the same footing—that of absolute equality, by compelling a *pro rata* distribution of the assets. *Rains* v. *Rainey*, 11 Humph., 261; *Kinsey* v. *McDearmon*, 5 Cold., 392. This was its sole purpose. It was not intended to affect or impair the liens acquired or fixed upon the property of debtors when in life, and the statute contemplates only a ratable division of the assets, which by law are subject to the satisfaction of the general creditors. *Fields* v. *Wheatley*, 1 Sneed, 354; *Winton, Adm'r,* v. *Eldridge,* 3 Head, 361; *Bacchus* v. *Peters,* 85 Tenn., 680, 4 S. W., 833.

The general creditors of the estate of an insolvent debtor have no greater right or interest in his property than he possessed at the time of his death. *Parchman* v. *Charlton,* 1 Cold., 382.

The contention of the complainant seems to be that the petitioners are attempting in this case to assert a lien on the property which they sold Vick, and which came to his hands with the other assets of the estate of the decedent; in other words, that the right to reclaim the possession of the property, which the vendee has fraudulently procured through the form of a sale, is an inchoate lien upon the property, which is not fixed and cannot be acquired without an action brought to recover the property, which was not done in this case until

Richardson v. Vick.

after the insolvency was suggested and the bill filed, and therefore it came too late—citing cases decided by this court involving unregistered mortgages and liens of execution, tested after the death of the deceased.

This is a misconception of petitioners' position and the rights which they are here asserting. They do not claim to be creditors, or to have a lien upon the property, either inchoate or fixed. They claim the absolute title and right to possession of the property, predicated upon the principle that they never parted with it, because of the fraud perpetrated upon them. This proposition is sound, and must prevail. The contracts of sale were voidable from the beginning, and, when disaffirmed, the original *status* of the parties was restored. The title of the property is in petitioners, and they have the right to the possession of it.

It is well settled that the vendor, in cases of this kind, can recover his property, notwithstanding a valid assignment made to secure general creditors, or the fact that the debtor has been declared bankrupt. *Belding* v. *Frankland,* supra; *Donaldson* v. *Farwell,* 93 U. S., 632, 23 L. Ed., 993, supra.

The general principles applicable to assignments for the benefit of creditors and proceedings in bankruptcy are much the same as those governing the administration of the estates of insolvent decedents. It has been held that a trustee in bankruptcy, holding goods affected with the fraud of the bankrupt, is in neither law nor morals justified in holding the goods obtained by

125 Tenn.—35

the fraud of the bankrupt for the benefit of other creditors; that creditors have no right to profit by the fraud of the bankrupt, to the wrong and injury of those who have been deceived and defrauded. The case in which this was said is almost identical in its facts with the one under consideration, and the vendor was allowed to recover from the trustee in bankruptcy the property which he had been induced to sell and deliver, on a credit. by the fraudulent misrepresentations of the vendee of his financial condition. *In re Hamilton Furniture Co.* (D. C.), 117 Fed., 774.

The petitioners are not creditors of the insolvent and deceased debtor. They have disaffirmed the contracts made with him, and merely claim the property which he fraudulently procured from them. The rights of no innocent third parties have intervened or attached. Petitioners have been guilty of no laches, and have not, since the fraud was discovered, reaffirmed the contracts made with them. Their first knowledge of the falsity of the representations made then, and of the insolvency of the deceased, was the suggestion of the insolvency of his estate by the complainant. They then promptly disaffirmed the sales made by them, and brought their petitions in this cause, under the orders of the court, to recover possession.

The decree of the chancellor, awarding them the possession of the property, as we have above stated, is correct, and must be affirmed.