sets of witnesses, and many of the defendants' witnesses were "interested witnesses" in that their respective stories tended to relieve them from personal negligence, we do not feel called upon to interfere with the verdict of the jury on this point. It is argued, however, that the complaint should have been dismissed on the ground that the plaintiff failed to show absence of contributory negligence on the part of the decedent. The cause of action arose, and the case was tried, before the recent amendment to the Code of Civil Procedure, which has transferred this burden to the defendant. It is true that there is no direct evidence on the part of the plaintiff to show that the decedent was free from contributory negligence. The man who fell into the pit is dead. No witness was produced who saw him in the act of falling. But direct evidence was given that he shouted for assistance and was found in the pit shortly after he got off a street car which ran on rails along one side òf the trench. The surrounding circumstances, which I will not detail, supported strongly an inference of fact that the decedent, as an ordinary wayfarer on a public street, exercising such care as the law requires from him, did not see this unguarded and unlighted hole, and fell into it accidentally; at least, under the facts in evidence, it was a fair question for the jury.

We are not unmindful of the opinion of Gray, J., in Peterson v. Ballantine & Sons, 205 N. Y. 29, 98 N. E. 202, for we have had occasion to apply it not long ago, but there the decedent was run down by a truck while crossing a public street in broad daylight. Witnesses were produced who saw him both immediately before and at the time of the accident. The facts proved showed that, had the decedent but glanced his eyes, he could not have escaped seeing the on-coming truck in time to avoid it. It was under such circumstances that it was held that there was a failure to show freedom from contributory negligence. The surrounding facts here at bar are so different that the holding in Peterson v. Ballantine & Sons, supra, does not require a reversal of this judgment.

Judgment and order affirmed, with costs. All concur.

---

(85 Misc. Rep. 594)

## In re NORTHERN BANK OF NEW YORK.

## In re CITY OF NEW YORK.

### (No. 5957.)

(Supreme Court, Appellate Division, First Department. June 5, 1914.)

1. MUNICIPAL CORPORATIONS (§ 255½, New, vol. 4 Key-No. Series)—GOVERNMENTAL POWERS AND FUNCTIONS—RIGHT TO PREFERENCE FOR DEBT.

Where a city had funds, derived from taxes, water rents, assessments, etc., on deposit with an insolvent bank, it was not entitled to preference in payment over other depositors and creditors by virtue of its public character, since, the money having already been received by the corporation, it belonged, not to the people of the state, but to the corporation as a separate entity acting for its own purposes, and not a subdivision of the state.

2. MUNICIPAL CORPORATIONS (§ 53*)—POLITICAL STATUS—RELATION TO STATE.

Except when a city is acting in a purely governmental capacity, it is not a mere subdivision of the state and not a sovereign power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 141, 143; Dec. Dig. § 53.*]

3. MUNICIPAL CORPORATIONS (§ 1*)—NATURE AND STATUS.

Municipal corporations are independent corporate entities created by the state, not only for governmental purposes, but also to do acts not governmental in their scope, though they be for the common good of the inhabitants.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1, 1½; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4620–4627; vol. 8, p. 7726.]

In the matter of the Northern Bank of New York. Motion by the City of New York for the preferential payment of its deposit. Motion denied, and the city appeals. Affirmed.

The following is the opinion of the court at Special Term:

At the time when the Northern Bank was put in the possession of the superintendent of banks the city of New York had on deposit in the bank about $200,000. The funds on deposit were derived from taxes, water rents, assessments, and arrears collected by the city. On April 14, 1913, the city of New York made a written demand on the superintendent of banks for the preferential payment of its deposit. This claim of preference was based upon the decision of the Court of Appeals in Matter of Carnegie Trust Co., in Liquidation (206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. [N. S.] 260), decided November 19, 1912, in which it was held that the state succeeded to the right which the crown had at common law to preference in the payment of debts, and that where it has funds on deposit with an insolvent banking corporation, it is entitled to preference in "payment over other depositors and creditors not having a prior specific lien on the assets." The superintendent of banks on April 14, 1913, rejected the city's claim to a preference, and the city on or about March 26, 1914, initiated these proceedings to establish its claims. The superintendent of banks urges as a preliminary objection that the city has, by various proceedings heretofore taken before the Court of Appeals handed down its decision, precluded itself from raising its present contention. I do not think that these proceedings need now be analyzed, for I find nothing in them that should cause the court to hold that the city has induced the superintendent of banks to change his position, or that would preclude the city from raising its present contention.

[1-3] The sole serious questions in the case are: First, has the city a right to preference by virtue of its public character? and, second, is this proceeding barred by section 19 of the Banking Laws (Consol. Laws, c. 2). If the city were claiming in this case a preference for unpaid taxes due from an insolvent corporation, there would be no doubt but that its claim would be well founded. The city in assessing the taxes is acting as a purely governmental authority. The power to tax is a sovereign power, and the city in laying a tax is acting as part of the state under authority given it by the people of the state, and in the exercise of this power it is entitled, I think, to all the prerogatives enjoyed by the sovereign under our common law, and its right to a preference in the distribution of the assets of an insolvent corporation has been declared in Matter of the Receivership of Columbian Insurance Co.. 3 Abb. Dec. 242, and in Matter of Atlas Iron Construction Co., 19 App. Div. 415, 46 N. Y. Supp. 467, and recognized in the Matter of Carnegie Trust Co., supra. See, also, same case in 151 App. Div. 606, 136 N. Y. Supp. 466. In this case, however, the city seeks to go further, and claims a preference for taxes already collected by the city authorities. It seems to me that as soon as the taxes have been collected and deposited, the city's claim to these mon-

eys ceases to be the claim of a sovereign. The only case upon this question which has been cited to me is that of County of Glynn v. Brunswick Terminal Co., 101 Ga. 244, 28 S. E. 604, in which the court held that, "if there is such a thing as a prerogative right of preference on the part of the state, it cannot be divided among the one hundred and thirty-seven counties of which it is composed." It seems to me that, even though the courts of this state should decline to follow the rule of that case, and should hold that the prerogative right of the state may be divided among its subdivisions where they are acting in a sovereign capacity, yet I think that our courts are firmly bound to the doctrine that, except where the city is acting in a purely governmental capacity, it is not a mere subdivision of the state, and is not a sovereign power. Dillon in his work on Municipal Corporations (5th Ed.) describes counties as follows: "They are involuntary political or civil divisions of the state created by general laws to aid in the administration of justice. Their powers are not uniform in all the states, but these generally relate to the administration of justice, the support of the poor, the establishment and repair of highways, all of which are matters of state as distinguished from municipal concern." Section 39. On the other hand, he points out: "That municipal corporations have been considered to possess two classes of powers, and that those which are granted for public purposes exclusively belong to the body corporate in its public, political or municipal character and are legislative and governmental in their nature, while if the grant is for the purpose of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation acts in a private or proprietary capacity." Section 1303. Undoubtedly in this state municipal corporations are independent corporate entities created by the state, not only for governmental purposes, but also with powers to do acts not governmental in their scope, though they be for the common good of the inhabitants. They are given by the state powers to lay taxes, though this power is a purely sovereign power, but they are also given power to hold money for their own purposes, and, once this money has been received, by taxes or otherwise, it undoubtedly belongs not to the people of the state, but to the municipal corporation created by the state. In the case of this money the corporation is, I think, clearly a separate entity acting for its own purposes, and not a subdivision of the state, and consequently not entitled to the prerogatives of a sovereign. It is urged by the city that the court should, however, adjudge that the city has a right to a preference upon principles of general public policy that funds intended for public benefit should be safeguarded before private funds, even though technically the city has no right to claim the prerogatives formerly enjoyed by the crown. Such an argument should, in my opinion, be addressed to the Legislature rather than the court. Since I have arrived at the conclusion that the city has no right to the preference claimed, it becomes unnecessary to consider whether this proceeding is barred by the statute of limitations. Motion is therefore denied, but without costs.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

F. R. Coudert, of New York City, for appellant.

H. H. Abbott, of New York City, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements on the opinion of Mr. Justice Lehman at Special Term. Order filed.