EDMONSON *v.* WALKER *et al.*

(*Jackson,* April Term, 1917.)

1. TAXATION.   Nature and power.

The right to tax is a sovereign power.   (*Post, p.* 582.)

Cases cited and approved.   Fid. & Guar. Co. v. Rainey, 120 Tenn., 360;   Re. Carnegie Trust Co., 206 N. Y., 390;   In re Northern Bank of N. Y., 163 App. Div., 974;   Matter of Receivership of Columbia Ins. Co., 3 App. Dec., 242;   Matter of Atlas Iron Const. Co., 19 App. Div., 415;   Huff v. Bidwell, 218 Fed., 6;   Hargrove v. Lilly, 69 Ga., 328;   Field's Ex'r. v. Wheatley, 33 Tenn., 351;   White v. N. & N. W. R., 54 Heisk., 546;   Bank of U. S. v. Planters' Bank, 9 Wheat., 904;   Mayor, etc., of Nashville v. Lea, 80 Tenn., 452;   Dennis v. Maynard, 15 Ill., 477;   Myers v. Park, 55 Tenn., 550;   McBean v. Chandler, 56 Tenn., 349-355;   Marr v. Enloe, 9 Tenn., 452.

Cases cited and distinguished:   Leeper v. State, 103 Tenn., 528;   Glynn County v. Brunswick Terminal Co., 101 Ga., 244;   In re Northern Bank of N. Y., 163 App. Div., 974;   Nashville, etc., Turnpike Co. v, White, 92 Tenn., 370.

Codes cited and construed:   Sec. 4090 (Thomp. Shan.)

2. EXECUTORS AND ADMINISTRATORS.   Priority of claim.   County tax.

A county has no prior right to payment of personal property taxes due it from an insolvent estate, where no distress warrants have been issued, especially as Thompson's Shannon's Code section 4090, fixing priorities for claims against insolvent estates, does not mention such taxes.   (*Post, pp.* 582-588.)

Acts cited and construed:   Acts 1851-52.

Cases cited and approved:   Burnett v. Maloney, 97 Tenn., 714;   Grant v. Lindsay, 58 Tenn., 665;   Railway Co. v. Wilson, 90 Tenn., 271;   Walsh v. Crook, 91 Tenn., 388;   Colburn v. Railroad, 94 Tenn., 43;   Shelby Co. v. Exposition Co., 96 Tenn.,

Edmonson v. Walker.

653; The Judges' Salary Cases, 110 Tenn., 388; State v. Akin, 112 Tenn., 605; Luehrman v. Taxing Dist., 70 Tenn., 425; Meriwether v. Garrett, 102 U. S., 511; Redistricting Cases, 111 Tenn., 234; Martin v. Blakemore, 52 Tenn., 57; Winton v. Eldridge, 40 Tenn., 362; Kinsey v. McDearmon, 45 Tenn., 399; Richardson v. Vinck, 125 Tenn., 543.

Cases cited and distinguished: Railroad v. Hamblen Co., 115 Tenn., 529; State ex rel. v. Cummings, 130 Tenn., 569; Demoville v. Davidson Co., 87 Tenn., 214; Mozier v. Zimmerman, 24 Tenn., 65; Field's Ex'r. v. Creditors of Wheatley, 33 Tenn., 354; Hargrove v. Lilly, 69 Ga., 326.

Codes cited and construed: Sec. 402, 4179, 4180 (S.).

3. **EXECUTORS AND ADMINISTRATORS. Claims. Payment.**

Thompson's Shannon's Code, sections 4064-4138, completely provides for settlement of insolvent estates, and section 4090 settles all priorities between creditors. (*Post, pp.* 582-588.)

4. **TAXATION. Personal property. Lien.**

No lien for taxes exists against personalty without the issuance of distress warrants, as provided for in Thompson's Shannon's Code, sections 876, 877. (*Post, pp.* 588, 589.)

Cases cited and approved: Dunn v. Dunn, 99 Tenn., 598; United States v. State Bank of North Carolina, 31 U. S., 29; Guarantee Title & T. Co. v. Title Guaranty & S. Co., 224 U. S., 152.

Codes cited and construed: Secs. 876, 877(S.); Secs. 757, 758 (Thomp. Shan.).

5. **TAXATION. Real property. Lien.**

Under Thompson's Shannon's Code, sections 757, 758, giving liens upon land for taxes, the lien extends in favor of the State, counties, and cities. (*Post, pp.* 588, 589.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to

the Court of Civil Appeals from the Supreme Court. —F. H. HEISKELL, Chancellor.

S. A. WILKINSON, for plaintiff.

R. LEE BARTELS, for defendants.

MR. SPECIAL JUSTICE W. B. SWANEY delivered the opinion of the Court.

The sole question at issue in this case is the right of a county to priority of payment of delinquent taxes assessed against personal property in the settlement of an insolvent estate in the chancery court. John Paine, a citizen and resident of Shelby county, died intestate in said county on the 29th day of April, 1913, leaving a widow and children. He owned real and personal property in Shelby county, but was indebted to complainant and others in amounts in excess of the value of his estate, and hence was insolvent in fact as well as in law. Among other assets left at his death was a laundry, which was assessed for taxes as personalty for the year 1913, at a valuation of $8,000, on which taxes were delinquent at the time of this proceeding in favor of the State and Shelby county in the sum of $111.20, with interest and penalties aggregating $21.64, making a total of $132.84.

John O. Walker was appointed administrator of said estate by the probate court of Shelby county. Shortly thereafter, being the largest creditor, com-

plainant filed a petition in the probate court suggesting the insolvency of the estate of John Paine and in due season brought this suit in the chancery court against the administrator, widow, heirs, and other creditors of said Paine to have the administration of said estate removed into said court and wound up as insolvent. In the interim the administrator, with the consent of the widow, heirs, and creditors, sold the laundry and took in part payment therefor some vacant lots in or near Memphis.

The chancery court assumed jurisdiction of said matters, and it soon developed that the creditors would not realize much in excess of fifty cents on the dollar upon their debts.

Pending the suit, and before a final distribution of the assets, a petition was filed in said case on behalf of the State of Tennessee and Shelby county, seeking to collect the taxes assessed against the laundry, assessed as personalty for 1913, with interest and penalties aggregating $132.84, and claiming a priority therefor against all other creditors for the full amount. The petition, omitting formal parts, is as follows:

"The county of Shelby, State of Tennessee, is one of the political divisions of the State, acting as a sovereign within its boundaries and imposing taxes upon property within the county. At the time of the death of John Paine, who was the owner of the Lamar laundry, there was due the county, and State, by way of taxes assessed upon the laundry, the sum of

$111.20, representing the amount due the county and State as taxes for the year 1913. Since that time interest has accrued, as well as penalties, aggregating $21.64, making a total now due of $132.84.

"The county of Shelby and State of Tennessee are advised, through their counsel and attorneys, that this is a preferred claim and entitled to priority over and above all other creditors.

"Premises considered, the petitioners, county of Shelby and State of Tennessee, pray that the claim herein mentioned may be allowed; that it be treated and decreed to be a preferred or prior claim; and that the administrator be required to pay the amount mentioned herein.

"For this and such other and further relief, as they may be entitled to in equity and good conscience, they will ever pray."

The clerk and master reported the amount of said taxes to be as claimed, $82.20, being due the county, and $29 the State, and added interest and penalties, all of said-sums being undisputed, and also reported that the State and county were both entitled to a preference in the payment.

The chancellor confirmed the report as to the amounts, but held that the State alone was entitled to priority, and allowed Shelby county to prorate with other unpreferred creditors.

A special appeal was prayed and perfected to the court of civil appeals by Shelby county to so much of said decree as adjudged that Shelby county was

not entitled to be classed as a preferred creditor. The court of civil appeals, after due consideration, affirmed the chancellor. The case is before this court upon a petition for *certiorari* in behalf of Shelby county.

Errors have been assigned raising the question of law before stated.

The record shows that the proceeds of the laundry upon which the taxes accrued during the life of the intestate went into the hands of the administrator and were a part of the funds still in court. The contention of learned counsel for Shelby county, briefly stated, is that all taxes constitute a priority, and are entitled to be paid before the claims of other creditors; that at common law a State, by virtue of its sovereign power, is entitled to priority of payment as against general creditors of an insolvent estate; that the collection of taxes is a governmental function; that in the matter of collection of taxes, as distinguished from the collection of other debts due to a municipal corporation, counties and cities stand upon the same plane as a State, i. e., the taxes due to them are due to them as sovereign powers and in the exercise of their respective governmental authority. The authorities relied upon to sustain these propositions are as follows: 22 Cyc., 1320; *Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn., 360, 113 S. W., 397; *Re Carnegie Trust Co.,* 206 N. Y., 390, 99 N. E., 1096, s. c., 46 L. R. A. (N. S.), 260; McQuillan, Munic. Corp., vol. 6, sec. 2644; *In re Northern Bank*

*of New York,* 163 App. Div., 974, 148 N. Y. Supp., 70; *Matter of Atlas Iron Construction Co.,* 19 App. Div., 415, 46 N. Y. Supp., 467; *Huff* v. *Bidwell,* 218 Fed., 6, 133 C. C. A., 646.

The learned counsel of the general creditors relies upon section 4090, Thompson's Shannon's Code, which provides for the distribution of the estate of a decedent among the creditors in an insolvency proceeding, which is as follows, viz.:

"In order to ascertain the fund to be distributed among the creditors, the clerk shall deduct from the whole estate:

"(1) All fees and commissions due in the administration thereof, including the allowance to the administrator or executor.

"(2) Claims for funeral expenses.

"(3) Debts and arrearages due to the state.

"(4) And such articles as are by law exempt from execution, if such belong to the estate. (1851-52, chapter 283, section 12.)"

The following cases are cited and relied upon, viz.: *Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn., 401, 113 S. W., 397; *Hargrove* v. *Lilly,* 69 Ga., 328.

The exact question is one of first impression in this state.

There is a discussion of the general subject in the case of *Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn., 399, 113 S. W., 397, but the facts of that case did not call for a decision of this exact question.

Rainey, clerk of the First and Second circuit courts of Davidson county, defaulted in the payment of certain funds which came into his hands belonging to litigants in his court, and also taxes collected by him belonging to the State, Davidson county, and the city of Nashville. The Fidelity & Guaranty Company was bondsman for Rainey on several bonds, covering these different funds, and filed the bill against Rainey and twenty-seven other parties, claiming to own some of said funds, including the State, county, and city, seeking to have fixed its liability upon all of said bonds, and enjoining separate suits by all other creditors, asking that it be treated as a general creditors' bill.

Answers were filed in behalf of the State, county, and city, and the case proceeded as a general creditors' bill. The State, county, and city each claimed priority in payment of their respective claims, as against the general creditors, and there was a substantial deficiency in the funds realized so as to present the question of indebtedness against Rainey and the bonding company as to the taxes collected by Rainey. Priority was allowed by the chancellor as to the State, county, and city. On appeal this court, in an opinion by Mr. Justice McAlister, affirmed the chancellor's decree as to the State, but reversed it as to the county and city. Section 4090, Thomp. Shannon's Code, was construed and held not necessarily to exclude the existence of priority as derived from the common law, which provided that the sovereign,

by virtue of his prerogative rights, was entitled to priority of payment of debts due him over debts due his subjects. After reviewing the authorities, the opinion concludes as follows, viz.:

"We are of opinion that the prerogative right of the sovereign to receive payment of fines, forfeitures, taxes, and revenue, and such demands as were due it in its sovereign capacity, was a part of the common law transmitted to this State from North Carolina, and that the decree of the chancellor was correct in adjudging priority to the State in the collection of its delinquent revenue on this bond.

"We are of opinion, however, that this priority does not extend to the counties and municipalities of the State. In *State* v. *Bank of Tenn.*, 5 Baxt., 1, Marion county asserted a claim to priority for a balance due it on account of a deposit in the Bank of Tennessee; but this priority was denied, and it was held that the county stood on an equal footing with other creditors of the bank. *Leeper* v. *State*, 103 Tenn., 528, 53 S. W., 962, 48 L. R. A., 167."

It will thus be seen that the county and city were seeking to collect from the bonding company taxes which Rainey had collected and failed to account for, and that it was not a proceeding, as now presented, where the county is proceeding to collect taxes against the estate of a delinquent taxpayer and funds derived from a sale of the property taxed are in the hands of the administrator.

137 Tenn.—37

Judge McAlister seems to have predicated the right of the State to priority of payment of the debt due it for taxes of various kinds collected by Rainey and misappropriated by him upon the theory that the State as a sovereign had the prerogative right to receive payment of fines, forfeitures, taxes, and revenue which Tennessee inherited as a part of the common law from North Carolina. The Rainey Case, as before stated, was not a proceeding to collect taxes as such, and the State, county, and city held similar debts against Rainey, who had collected taxes due to each, and wrongfully appropriated same to his own use.

Subsection 3, section 4090, Thomp. Shan. Code, viz., "(3) Debts and arrearages due to the State," would seem by its terms to provide for the State unless the construction of this statute in *Field's Ex'r* v. *Wheatley,* 1 Sneed, 351, and the principle enunciated in *White* v. *N. & N. W. R.,* 7 Heisk., 546-547, apply.

In the *Field Case, supra,* this statute was construed in an insolvency proceeding, wherein the State, as sole stockholder of the Bank of Tennessee, claimed and sought to obtain priority of payment for a debt resulting from a deficiency arising from the foreclosure of a mortgage on real estate to secure a debt due the Bank of Tennessee, of which the State was the only stockholder. The priority of payment was denied the State, and the language was held to refer to "debts and arrearages due to the

government, or State, in its sovereign character, as revenue, fines, forfeitures, penalties,'' etc.

The decision was based, however, upon the fact that the State having gone into private business, and not having conferred any sovereign powers upon the Bank of Tennessee, the State divested itself of its sovereign character, and thereby became as any private citizen; citing *Bank of U. S.* v. *Planters' Bank*, 9 Wheat., 904, 6 L. Ed., 244, and other cases.

No question having been made here as to the right of the State to be paid in full, it is not deemed necessary to further discuss this question as to whether the State in this case was entitled to collect its taxes in its sovereign capacity under the doctrine of the common law or under the express provision of the Statute.

In the case of *Mayor, etc., of Nashville* v. *Lea,* 80 Tenn. (12 Lea), 452, which involved a question as to the priority of payment as to taxes against land, between the State, county, and city, where the proceeds of the sale were insufficient to pay all, it was held that the lien of each was equal, and the State had no right as sovereign to assert a prior right of satisfaction.

In answer to the contention of the State that it had a prior claim as sovereign, the court said:

''While it is true, as a general principle, the State as sovereign does assert a prior right of satisfaction of debts due to it over the citizen, yet counties and municipal corporations are governing agencies cre-

ated by the State with powers to levy and collect taxes, and have the right .to exercise all the powers and privileges granted them or conceded by the State.'' 80 Tenn. (12 Lea), 454.

The authorities are in conflict on the right of counties and municipalities to priority of payment in insolvency proceedings in the absence of. statutes.

In *Glynn County* v. *Brunswick Terminal Co.,* 101 Ga., 244, 28 S.· E., 604, the rule is stated as follows, viz.:

''While it may be true that the State, on account of its prerogative right, has this preference, we cannot hold that the same right applies to the counties of the State. If there is such a thing as prerogative right of preference on the part of the State, it cannot be divided among the 137 counties of which it is composed. 8 Bac. Abr., under head of 'Prerogative.' We think it safe to hold that the county has no such prerogative right as the State.''

The facts of the Georgia case do not show that taxes were involved, but that the county treasurer had deposited funds in a bank that failed.

*In Re Northern Bank of New York,* 163 App. Div., 974, 148 N. Y. Supp., 71, which was a case wherein the city of New York was claiming priority for funds derived from taxes, water rents, assessments, and arrears collected by the city, it is said:

''If the city were claiming in this case a preference for unpaid taxes due from an insolvent corporation, there would be no doubt but that its claim

Edmonson v. Walker.

would be well founded.    The city in assessing the
taxes is acting as a purely governmental authority.
The power to tax is a sovereign power, and the city
in laying a tax is acting as part of the State under
authority given it by the people of the State, and
in the exercise of this power it is entitled  .  .  .
to all the prerogatives enjoyed by the sovereign un-
der our common law, and its right to a preference
in the distribution of the assets of an insolvent cor-
poration has been declared in *Matter of the Receiv-
ership of Columbian Insurance Co.*, 3 Abb. Dec. (N.
Y.) 242, and in *Matter of Atlas Iron Co.*, 19 App.
Div., 415, 46 N. Y. Supp., 467, and recognized in the
*Matter of Carnegie Trust Co.*, 206 N. Y., 390, 99 N.
E., 1096; s. c., 46 L. R. A. (N. S.), 260.''

This doctrine as to counties is broadly stated and
held in the case of *Dennis* v. *Maynard*, 15 Ill., 477.

As we understand this doctrine, it is based upon
the idea that the right to tax is a governmental func-
tion, and, as to the States of this Union, they have
the inherent power to levy and collect taxes for gov-
ernmental purposes, and are only limited by the Con-
stitution of the United States and their own consti-
tutions; that counties and municipalities are crea-
tures of the States, and certain powers are given
them to levy and collect taxes, and that as to taxes
they have limited sovereign rights and exercise gov-
ernmental functions, and while so engaged are en-
titled to full protection in all the courts.

There can be no doubt as to the right to tax being a sovereign power. In *Nashville, etc., Turnpike Co. v. White,* 92 Tenn., 370, 22 S. W., 75, it is said:

"The right of taxation is inherent in the State."

"The power to tax rests upon necessity, and is inherent in every sovereignty. It is so unlimited in force and so searching in extent that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rests in the discretion of the authority which exercises it. Cooley's Lim. 479." *Myers* v. *Parks,* 8 Heisk., 550, 551, 562.

See, also, *McBean* v. *Chandler,* 9 Heisk., 349-355, 24 Am. Rep., 308.

In *Marr* v. *Enloe,* 1 Yerg., 452, it was held that, under the Constitution of 1796, the legislature could not delegate the power of taxation to counties.

Article 2, section 29, Constitution of 1870, provides as follows, viz.:

"The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation."

While the Constitution recognizes counties, our courts have uniformly held that they only have such powers as are conferred upon them by the legislature and have no inherent power of taxation.

In the recent well-considered case of *Railroad* v. *Hamblen County,* 115 Tenn., 529, 92 S. W., 239, it is said:

"Counties are provided for by the Constitution, but their creation, and the powers with which they, for the most part, may be vested, are left to the discretion of the legislature. They have been created corporations, and the justices in the county court (quarterly court), assembled, are their representatives, and authorized to act for them. Code, section 402; Shannon's Ed., 493.

"Their powers and duties have been defined by this court in the case of *Burnett* v. *Maloney,* 97 Tenn., 714, 37 S. W., 689, 34 L. R. A., 541, as follows:

" 'Counties do not hold and operate under charters as do cities and other municipal corporations. They have no franchises. They make, and can make, no by-laws. They have the same powers and duties throughout the State. They do not have to provide waterworks and fire departments and lights and the hundred and one necessaries for cities and towns. Their ordinary expenses are met by issuance of county warrants payable out of a general fund collected for all purposes. The occasions for extraordinary expenditures are few, such as the building of jails, courthouses, bridges, and hospitals, and, if it becomes necessary to incur a debt for these purposes which cannot be at once met out of the usual revenues, they must get their authority to create such

debts, from an enabling act of the legislature, which at the same time gives them power to provide for its payment by a special act, and no doctrine is better settled in this State than that the power thus conferred must be strictly construed and exactly followed.'

"The county court, composed of the justices of the county, and known as the quarterly court, has no inherent power of taxation. It is the legislative council of the county created by the General Assembly to act for it in such matters as it may be authorized, and has only such jurisdiction and powers as are expressly conferred upon it by statute. Code, sections 4179, 4180, 4186; Shannon's Ed., section 5992; *Grant* v. *Lindsay,* 11 Heisk., 665; *Railway Co.* v. *Wilson,* 90 Tenn., 271, 16 S. W., 613, 13 L. R. A., 364, 25 Am. St. Rep., 693; *Walsh* v. *Crook,* 91 Tenn., 388, 19 S. W., 19; *Colburn* v. *Railroad,* 94 Tenn., 43, 28 S. W., 298; *Shelby County* v. *Exposition Co.,* 96 Tenn., 653, 36 S. W., 694, 33 L. R. A, 717; *The Judges' Salary Cases,* 110 Tenn., 388, 75 S. W., 1061; *State* v. *Akin,* 112 Tenn., 605, 79 S. W., 805."

See, also, *State ex rel.* v. *Cummings,* 130 Tenn., 569, 172 S W., 290, L. R. A., 1915D, 274, where it is said:

"This involves a consideration of the relation sustained by a county as a public corporation to the State. In *Demoville* v. *Davidson County,* 87 Tenn. (3 Pickle), 214, 225, 10 S. W., 353, 356, it was said:

"'The county is but an emanation from the State. It does not exercise any power or franchise under

Edmonson v. Walker.

any contract between itself and the State. The latter creates, and it may destroy. The State delegates the power of taxation, but it may withdraw such power, and itself assess taxes for municipal purposes.'

"In the absence of constitutional restraints, and our Constitution contains none, it was declared in *Luehrman* v. *Taxing District*, 2 Lea (70 Tenn.), 425, 438, the maxim of republican government that local affairs should be managed in the local district is subject to such exceptions as the legislative power shall see fit to make.

" 'The legislature has the power to do whatever is not expressly, or by necessary implication, forbidden by the Constitution.' *Id.; Meriwether* v. *Garrett*, 102 U. S., 511, 26 L. Ed., 197.; *Redistricting Cases*, 111 Tenn., 234, 290, 80 S. W., 750.

"It follows that a county, as a mere arm of the sovereign power, can have, as against the legislative power of the sovereign, no vested rights in the powers conferred upon it for governmental purposes, and that the legislature has plenary power to make provision respecting and to direct the expenditure of the funds of a county raised and held by it under or based upon the taxing power delegated to it."

In the *Cummings Case, supra,* it will be noticed that the funds in question were held by the county in its public capacity for governmental purposes.

Under these authorities we are constrained to hold that the question of power in the county to assert the prerogative right of a sovereign to priority of payment of its taxes in a case like the present does not exist, and upon the whole case we do not disagree with the conclusion reached by Judge McAlister in the Rainey Case.

The legislature in Acts 1851-52, as found in Thomp. Shan.'s Code, sections 4064 to 4138, for the "Administration of Insolvent Estates," without doubt had the power and did undertake to provide a full scheme for the settlement of insolvent estates, and section 4090 by its terms fixes priorities for four classes only. There is no provision for taxes due the counties. It now remains to construe said act with reference to the right of the county in the collection of its taxes in such a proceeding as this.

This act has been construed in many cases, and it is held that all the provisions of the Code as to insolvent estates, being parts of one entire system, are to be construed as one statute and taken all together. *Martin* v. *Blakemore,* 5 Heisk., 57.

In *Mozier* v. *Zimmerman,* 24 Tenn. (5 Humph.), 65, it is said:

"These statutes are to receive such construction as will advance the remedy intended by them, and suppress the evil. The evil to be suppressed was the power given by law to a vigilant and active creditor to appropriate all the effects of an insolvent estate to his own claim, to the exclusion of other creditors

of equal merit, but of less rapaciousness or astuteness, and the remedy is to compel a *pro rata* distribution in such cases."

There can be no doubt about the proposition that this act in section 4090 does undertake to fix and settle all priorities as between creditors, as by its very terms it says that, in order to ascertain the fund to be distributed among the creditors, certain debts only shall be first paid. Neither county nor city taxes are provided for.

In construing this act as to liens, in *Field's Ex'r* v. *Creditors of Wheatley,* 1 Sneed, 354, it is said:

"The statutes regulating the administration of insolvent estates were not intended and cannot be construed to affect, in the remotest degree, liens acquired in the lifetime of the deceased insolvent. They contemplate only a ratable division of the assets which by law are subject to the satisfaction of the general creditors."

See, also, *Winton* v. *Eldridge,* 3 Head., 362; *Kinsey* v. *McDearmon,* 5 Cold., 399; *Richardson* v. *Vick,* 125 Tenn., 543, 145 S. W., 174.

In *Hargrove* v. *Lilly,* 69 Ga., 326, the supreme court of Georgia, in construing a statute similar to the one in question, said:

"The legal question must be settled by the statute regulating and directing the payment of debts by executors and administrators and that giving to the wife the right of dower.

"First then, as to the priority of debts, which is declared to be as follows: The funeral expenses, in-'cluding the physician's bill and expenses of the last sickness, the necessary expenses of administration, including a provision for the support of the family, unpaid taxes, or other debts due the State or United States, debts due by deceased as executor, adminis-trator, guardian, or trustee, then judgments, mort-gages, etc.

"Under the foregoing provisions, the claim of the county could only be paid before the others upon the ground that it was a debt due the State. Is it then a debt due the State? We think not. Each county is a body corporate, with such powers and limitations as may be prescribed by law. Suits may be brought by or against a county in the name thereof."

In this State there is no lien against personalty for taxes, as such, without the issuance of distress warrants, as is provided for in Thomp. Shan.'s Code, sections 876, 877. However, there is such a lien upon land for taxes against it in favor of the state, county, and city. See Thomp. Shan.'s Code, sections 757, 758.

It should also be noted that in *Dunn* v. *Dunn,* 99 Tenn., 598, 42 S. W., 259, and other cases, it has been held that the lien of the State, county, and city on real estate for taxes is superior to all liens, mort-gages, and incumbrances, of whatever kind there

might be, upon the property. This, however, would not preclude the United States from asserting its priority under Revised Statutes, sections 3466, 3467. The prerogative right of priority of payment does not inhere in the United States, but its right depends alone upon statute. *United States* v. *State Bank of North Carolina,* 31 U. S., 29, 8 L. Ed., 308.

In *Guarantee Title & T. Co.* v. *Title Guaranty & S. Co.,* 224 U. S., 152, 32 Sup. Ct., 457, 56 L. Ed., 706, in construing the Bankrupt Act of 1898, the supreme court held that said act gave priority of payment of labor claims against the United States, and that it was valid and binding against the government.

The record showing that taxes on personalty are alone involved, and no steps having been taken to fasten a lien upon the property or its proceeds, the court is of opinion that the correct result was reached and the petition for *certiorari* is denied, with costs.