JOHNSON CITY *v.* PRESS, INC., *et al.*

(*Nashville,* December Term, 1936.)

Opinion filed February 1, 1937.

CHALKLEY & BRANDT, of Johnson City, for Johnson City.

ROBERT M. MAY, of Jonesboro, for the State and Washington County.

MILLER, MILLER & MARTIN, of Johnson City, and J. ALVIN JOHNSON, of Knoxville, for Mergenthaler Linotype Co.

SIMMONDS & BOWMAN, of Johnson City, for Press, Inc.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed by Johnson City to enforce a lien for taxes assessed upon personal property of Appalachian Publishers, Inc., for the years 1929, 1930, 1931, 1932, and 1933. Subsequently the State and county intervened to enforce their claim for taxes.

Before the bill was filed, the personal property of Appalachian Publishers, Inc., was sold under a bankruptcy proceeding to James Hammond, subject to unpaid taxes, and by Hammond to Press, Inc., subject to unpaid taxes. The property against which the assessment was made consisted of a newspaper plant and the presses, machinery, and articles required for the publication of a newspaper. Included in the general assessment against Appalachian Publishers, Inc., were two linotype machines covered by a mortgage to Mergenthaler Linotype Company.

In January, 1935, before Linotype Company foreclosed its mortgage on the two machines, Mr. Harkreader, representing Press, Inc., commenced negotiations to buy the two machines. Both parties agree that, after Linotype Company foreclosed its mortgage and became owner of the machines, the negotiation of Harkreader culminated in a sale to Press, Inc.

Supposing, as Press, Inc., and Mergenthaler Linotype Company insist, that the minds of the parties met in

agreement, there is now a controversy as to whether under the contract Press, Inc., purchased the two machines unincumbered or took them subject to the tax if the tax is a charge upon them. Both parties, however, deny the right of the State, county, and city to enforce the alleged tax claims based on the assessment against Appalachian Publishers, Inc.

The chancellor decreed:

(1) That Mergenthaler Linotype Company and Press, Inc., entered into a contract of sale by which Press, Inc., purchased the two linotype machines described in the record for the consideration of $5,000 free from the lien for taxes or other incumbrance.

(2) That under the statute, Code, sections 1329, 1330, chapter 602, section 31, Acts of 1907, all the personal property that passed into possession of Press, Inc., by its purchase from Hammond, including the two linotype machines, is subject to the lien for taxes legally assessed upon the property of Appalachian Publishers, Inc.

(3) That the claim of the city for the years 1929 and 1931, and the claim of the State and county for the year 1931, is not enforceable because there was no legal assessment.

(4) A lien was declared upon all the property under the assessment by the city for taxes levied for the years 1930, 1932, and 1933, and under the assessment by the State for the years 1932, 1933, and 1934. By the decree a lien is fixed upon the more than two hundred separate items, including the two linotype machines, listed on four and one-half closely typewritten pages of the record. The clerk and master was ordered to sell all the property and apply the proceeds to the payment of $1,234.37 taxes due the State and county and $2,222.52 taxes due the city.

(5)   The attachment issued under the prayer of the original bill and the return thereon were held insufficient to impound the property.   For that reason the attachment was quashed.

(6)   The question of apportionment of the tax liability between the property of the Linotype Company and Press, Inc., was reserved.

The Mergenthaler Linotype Company and Press, Inc., prayed and were granted limited appeals, and both assigned errors.   Both insist that the lien does not attach to personal property assessed for *ad valorem* taxes until impounded by a distress warrant as provided by section 1574 of the Code.   The Linotype Company insists that the chancellor erroneously decreed that its sale to Press, Inc., was made free from the alleged tax lien; and, if the two linotype machines are subject to the delinquent tax, the chancellor erroneously refused to sever them from the mass and apportion the tax between it and Press, Inc.

To effect a valid assessment of real property the description on the tax books must be sufficient to identify the property.   *Morristown* v. *King,* 11 Lea, 669. But an assessment in general terms of money is sufficient to impose liability upon the owner for the tax upon personal property.   26 R. C. L., p. 357, sec. 314.

However, under an ambiguous statute declaring a tax lien on personal property, and where there is a blanket assessment in terms of money instead of by specific description of the property, statutes declaring the lien must be construed to restrict the lien to property in possession of the taxpayer, rather than extend it to property that has passed in course of trade to persons not subject to the tax.   61 C. J., 936.   The reason for

the rule is stated in Cooley on Taxation (4 Ed.), sec. 1230:

"Inasmuch as taxes are not a lien unless expressly made so by statute, and since liens created are not to be enlarged by construction, the doubt should be resolved to restrict the lien on the property of the person against whom the taxes are assessed."

The legislative declaration found first in section 31, chapter 602, Acts of 1907, and brought into sections 1329, 1330 of the Code, to the effect that assessed taxes on all "real estate, personalty, railroad," etc., shall be and remain a first lien upon such property, cannot properly be construed to mean that under a blanket assessment of personal property in general terms of money the tax collecting officials may follow the property, on which the general assessment is based, into the broad field of barter and trade, take it from innocent purchasers, and subject it to the payment of the taxpayer's liability. Section 1574 of the Code carries that implication. It requires that, after taxes are delinquent for more than thirty days, the tax books in the hands of the trustee shall have the force and effect of a judgment and execution from a court of record and authorize the tax collecting authorities to distrain and sell a sufficient amount of the personal property of a delinquent to satisfy his taxes.

Upon the foregoing considerations rest the broad generalization found in *Edmonson* v. *Walker*, 137 Tenn., 569, 195 S. W., 168, to the effect that no tax lien exists against personalty for taxes without issuance of a distress warrant. The idea suggested in the opinion rests upon the common-law theory of a lien which implies

actual or constructive possession in the person claiming the lien.

However, the foregoing principles cannot be invoked by appellants, for they do not apply to their situation. Press, Inc., admits that it purchased the property from James Hammond subject to delinquent taxes charged against it. Included among the numerous items required to equip a newspaper plant were the two linotype machines. The legal title of the machines was in Appalachian Publishers, Inc., subject to the equity of the Linotype Company, when the bulk assessment was made. It appears from the record that all the property of Appalachian Publishers, Inc., including the two linotype machines, charged with the equity of Linotype Company, passed to Press, Inc., by purchase from James Hammond, subject to the delinquent taxes. Press, Inc., having acquired the property subject to the delinquent taxes, does not occupy the position of an innocent purchaser but that of a purchaser subject to the delinquent taxes. It may be inferred that the unpaid taxes were in contemplation of the parties when Press, Inc., purchased from Hammond and that the sale price was abated accordingly.

Mergenthaler Linotype Company, purchaser of the machines upon foreclosure of its mortgage, is not an innocent purchaser. It recognized that they were subject to the tax in negotiations with Harkreader. It took them subject to the assessment made while the legal title was in Appalachian Publishers, Inc., and the machines are chargeable with their proportion of the total assessment.

We find no error in the decree of the chancellor holding that this property, which included at the time of

the assessment the two linotype machines, is subject to the tax for the years fixed by the chancellor's decree.

We have considered the question of whether or not Press, Inc., purchased the linotype machines subject to the tax as insisted by the Linotype Company. During the negotiations both parties understood that the delinquent taxes were unpaid and evidence in the record indicates that both parties assumed that the machines might be subjected to payment of the tax. We find nothing in the contract of sale to fix liability upon Press, Inc. In a contract for the sale of goods, and without provision to the contrary, there is an implied warranty that the goods shall be free at the time of the sale of any charge or incumbrance of any third person. Code, sec. 7206, subsec. 3; *Trigg* v. *Fariss*, 24 Tenn. (5 Humph.), 343. There is no preponderance of the evidence to show that Press, Inc., took the linotype machines subject to liability for the tax.

After the sale by Hammond to Press, Inc., the Mergenthaler Linotype Company repossessed the two linotype machines and acquired title to them before the sale to Press, Inc. The Linotype Company now owns the machines and Press, Inc., owns the other property against which the tax was assessed. While all the property acquired by Press, Inc., including the linotype machines, was purchased subject to the tax assessed upon the bulk, it would be inequitable to decree a sale of the entire property without affording Press, Inc., and Mergenthaler Linotype Company opportunity to avoid the sale by payment of the tax. That cannot be done without an apportionment of the charge upon the whole property between the two parties who now own parts of it individually.

The decree of the chancellor will be accordingly modified. The decree for sale for the present will be set aside and the cause remanded so that the chancellor may determine by reference to the master or otherwise, before final decree for sale, the just proportion of the tax for which each of the parties is liable.

With the modification indicated, the decree of the chancellor is affirmed and the cause remanded for further proceedings.