## KATZENBERGER *v.* LEEDOM & Co.

### (*Jackson.* April 15, 1899.)

1. SALES. *Seller's right to reclaim property by reason of buyer's fraud.*

   The seller of goods may reclaim them from an insolvent buyer or his assignee for creditors, where the buyer obtained them with the fraudulent intent not to pay for them, and this fraudulent intent may be deduced from the circumstances surrounding the transaction. (*Post, pp. 150, 151.*)

   Cases cited: Brooks *v.* Paper Co., 94 Tenn., 701; Boyd *v.* Mosely, 2 Swan, 661; Mississippi Mills *v.* Bank, 9 Lea, 314; Belding Bros. *v.* Frankland, 8 Lea, 67; Pettigrew *v.* Turner, 6 Hum., 440; Brown *v.* Vanlier, 7 Hum., 239.

2. REPLEVIN. *Verdict sustained by proof.*

   A verdict for the plaintiff, in an action of replevin by the seller of goods to recover them from an assignee of the buyer, upon the ground that the latter had obtained them with the fraudulent intent not to pay for them, will not be set aside by this Court, as unsupported by the evidence, where it appears that on October 31, 1894, defendant's assignor made an assignment to him, preferring certain creditors; that early in the preceding summer he began to buy goods from various dealers, including plaintiff, in unusually large quantities, all over the country; that he always stipulated for such period of credit as would bring the time of payment beyond the time when the assignment was made; that he was more particular as to time than prices; that the assignment was made just before the bills for a large part of such goods became due, and that the purchaser did not testify to show good faith or explain his conduct. (*Post, pp. 145–153.*)

   Cases cited and approved: Kirkpatrick *v.* Jenkins, 96 Tenn., 87; Minton *v.* Stahlman, 96 Tenn., 111; Street Railroad *v.* Seigrist, 96 Tenn., 124; Young *v.* Cowden, 98 Tenn., 581.

Katzenberger *v.* Leedom & Co.

3. CHARGE OF COURT. *Should not direct verdict.*

It is not the practice in this State to instruct a jury that there is no evidence to support an issue, except on a demurrer to the evidence. (*Post, pp. 153, 154.*)

4. EVIDENCE. *Transaction with third person not incompetent, when.*

In replevin for goods alleged to have been purchased by an insolvent, with intent not to pay therefor, evidence that he gave another person an order as part of the same fraudulent scheme, which was so much larger than usual that he refused to fill it, is not incompetent because it relates to a transaction with a person not a party to the suit, or because it was not shown to have occurred before the purchase from plaintiff. (*Post, p. 154.*)

---

FROM   SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

L. & E. LEHMAN for Katzenberger.

JNO. P. EDMONSON for Leedom & Co.

McFARLAND, Sp. J. This is an action of replevin for certain carpets and other personalty sold in July and August, 1894, by Thos. L. Leedom & Co., of Bristol, Pa., to one L. D. Harris, then doing business in Memphis, Tenn. The sale was upon time, the last bill sold on August 30, 1894, by Leedom & Co., and maturing on September 25, 1894, the total amount of goods which were not paid for amounting to $1,287.78.

19 P—10

On October 31, 1894, L. D. Harris made what is called a partial assignment to L. Katzenberger, trustee, of his stock of goods, iron safe, and trade fixtures in his store house in Memphis. This conveyance provided that the trustee was to take possession of this stock of goods, etc., and sell same, and from proceeds, after expenses of trust, pay (1) Mechanics Savings Bank, $4,000; (2) Mrs. Rachel Brandt, $2,750; (3) T. H. Harris, $1,250; (4) Mrs. V. Hewett, $525; total, $8,525, and having paid these four debts in full, he was to distribute balance among other creditors, seventy in number, whose debts aggregated some $25,000, and scattered among a great number of places.

Only a part of the goods sought to be replevied were found, and these were taken possession of by the Sheriff under these proceedings, and turned over to the plaintiffs.

There was a trial before the jury with verdict and judgment for the plaintiff, motion for new trial which was overruled, appeal by defendant Katzenberger, trustee, and assignment of errors.

The first and main error assigned is: "The verdict of the jury was against the evidence. There was no evidence at all introduced which would warrant a verdict in favor of the plaintiffs, and the verdict on the evidence should have been in favor of the defendant. There was no evidence tending to show that Harris made any rep-

resentations to plaintiffs to induce them to give him credit. There was no evidence tending to show that any representations to any other person was false."

In other words, the substance of this assignment is that there was no evidence to sustain the verdict. It is claimed by the defendant, Katzenberger, trustee, that there was no evidence of fraud upon the part of Harris in the purchase of these goods, which should invalidate the sale and enable the sellers, Leedom & Co., to reclaim the goods, after receipt of goods by Harris, and his retention of same for several months.

The contention of the plaintiffs is that early in the year 1894 Harris conceived a scheme of buying on credit a large stock of merchandise, and after getting the goods in his house, and before the bills matured, to fraudulently transfer the goods to trustee, first securing a large debt made by him for money gotten from the bank, and then special friends, and thereby cheat and defraud the people from whom he had bought; that he planned to buy the goods on a credit, so as to make the bills mature after November 10, 1894, and did so, perfecting his assignment on October 31, 1894, before these bills matured; that he began thus to buy in the early summer, and when he could not get time enough to run the bills beyond November 10, 1894, he would ask for datings—that is, he would buy on, say,

sixty or ninety days time, and then ask for his
bills to be dated ahead, so as to make the bills
mature about November 1, 1894; that under this
scheme he purchased a large amount, perhaps $25,-
000. or $30,000 of goods from various manufac-
turers and dealers from all over the country from
New York City to St. Louis, and from Grand
Rapids, Mich., to Atlanta, Ga.; that he bought
just as much as he possibly could buy on time,
and was more particular about the time than the
prices charged.

The evidence of Harris was not· taken by
either party, nor that of Katzenberger, trustee, to
show value of goods assigned to him, or what
they would pay the general creditors. The evi-
dence in the case, all taken by the plaintiff, was
of some twenty-three of these various creditors,
who testified principally as to the date, amount,
and manner of these purchases.

The principal reliance for reversal in this case
is that the facts of this case are similar to those
in the case of *Brooks* v. *Paper Co.,* 10 Pickle,
701, and it is argued that it is an impossibility
to affirm the verdict of the jury and judgment
of the Court in this case without reversing *in
toto Brooks* v. *Paper Co.* case.

It is important, therefore, to notice what were
the facts in the Brooks case, and what were the
principles decided. In that case, Brooks & Co.
were paper dealers in Memphis. The Geo. H.

Friend Paper Co. were dealers in Carrolton, Ohio. On January 14, 1893, the goods replevied were ordered by Brooks by letter, in which terms as to time were given, the goods were shipped on January 21, 1893, arrived at Memphis January 28, 1893, remained in the railroad warehouse until the 30th, when they were delivered to Brooks & Co. in their store. On the 31st they made an assignment, which was partial and preferential. It had been contemplated as a possible necessity for several days, and was prepared on Saturday the 28th, but not executed until Tuesday the 31st. In the assignment Brooks & Cole included among the list of their creditors, an indebtedness to this paper company for previous purchases, but not this last bill. The paper company replevied these goods. There was a trial before Circuit Judge, without jury, with judgment for plaintiff, and this judgment was reversed by this Court, because there was no evidence to sustain it. The facts in that case were materially different from those in this. There Brooks testified that his assignment was brought about unexpectedly by one of his principal creditors, who had promised an extension, but refused to grant it at the last moment; that the preparation of the deed, before the receipt of these goods, was to be prepared for final answer of this creditor, and that this final refusal of extension came after receipt of these goods. There

was no question of the good faith of Brooks & Cole in the transaction, and the main legal question was whether, in the absence of fraud, the legal title to these goods had passed to them before the assignment. This Court says: "The fact that the purchaser became insolvent before the goods reached their destination, does not divest a title which vested without fraud."

Again, "By the delivery to the carrier, the paper became vested in the purchaser, subject only to the seller's right of stoppage in transit, or avoidance for fraud." Citing *Boyd* v. *Mosely,* 2 Swan, 661; *Mississippi Mills* v. *Bank,* 9 Lea, 314; *Harding* v. *Metz,* 1 Tenn. Ch., 610.

In the Brooks case, therefore, there was this simple legal question, as to when the title to the goods passed, there being no fraud, while in this case the whole question is as to whether the whole transaction was not fraudulent.

In *Belding Bros.* v. *Frankland,* 8 Lea, 67, this Court has said: "It is now well settled, both in England and America, that if a person purchase goods with the fraudulent intent of not paying for them, the vendor may disaffirm the sale, although the goods be delivered, and revest the property in him, and recover them by action against the vendee. *Load* v. *Green,* 15 M. & W., 216; *Stuart* v. *Emerson,* 52 N. H., 201; *Klien* v. *Baker,* 99 Mass., 253; *Cony* v. *Hotailing,* 1 Hill, 311."

The mere insolvency of the purchaser, without more, will not suffice to avoid the sale. *Ex parte Whittaker,* L. R., 19 Ch. App., 446; *Nichols* v. *Piner,* 18 N. Y., 300.

This Court, in *Belding* v. *Frankland,* says further: "Yet, this fraudulent intent may be deduced from the facts and circumstances (see 8 Yer., 489; 2 Cold., 308) without any actual representations, full knowledge by the purchaser of his insolvency being always a controlling element. *Hennigain* v. *Nayler,* 24 N. Y., 139; *Thompson* v. *Rose,* 16 Conn., 71; *Talcott* v. *Henderson,* 31 Ohio, 162."

If the vendor may recover possession of the goods against the vendee, he has the same right against an assignee under a voluntary assignment for the benefit of creditors who stand in the shoes of the assignor. *Nichol* v. *Michael,* 23 N. Y., 264; *Pettigrew* v. *Turner,* 6 Hum., 440; *Brown* v. *Vanleer,* 7 Hum., 239; *Harding* v. *Metz,* 1 Tenn. Ch., 610.

And it seems to have been held that the receipt of goods by an insolvent, with design not to pay for them, would avoid the sale, although he had no such design when he ordered them. *Peke* v. *Weeting,* 49 Barb., 314.

It would seem, therefore, to be settled that a seller may reclaim his goods where they were purchased by an insolvent, with the fraudulent intent of not paying for them, even though the

goods have been assigned to pay existing creditors, and that this fraudulent intent may be deduced from the facts and circumstances surrounding the transaction.

The question, therefore, in this case, unlike that in the Brooks case, was one of fraud, and clearly different from that.

It remains, therefore, only to determine whether there were any facts proven in this case from which the jury may have deduced a fraudulent intent upon the part of Harris in the purchase of these goods, and the fact of his inability to pay for them.

The twenty-three creditors testifying in the case, establish with certainty, a number of these agreeing as to each substantial fact, the main facts of the contention of plaintiff. They show that Harris began to buy in the early summer, buying more heavily than he was accustomed to do; that he bought on time, nearly all extending beyond the date of the assignment. He purchased a large amount of goods. He bought all over the country, having over seventy creditors named in his assignment. He was more particular as to time than prices, say several of these witnesses. He said to several, during these purchases, that he owed nothing except for goods in transit.

The assignment of October 31, 1894, is just before maturity of a large part of this indebtedness, and is in itself evidence of insolvency. There

is no effort shown in this record by Harris, who does not even testify, to show his solvency and the good faith of these purchases, or explain these damaging coincidences. These and other minor facts and circumstances tend to support the theory of plaintiffs, and establish the fraud charged, and they are too many and weighty for this Court to say there was no evidence to support the verdict, under the well-established rule of this Court as to what evidence is sufficient to support the verdict of a jury. *Kirkpatrick* v. *Jenkins*, 12 Pickle, 87; *Menton* v. *Stahlman*, 12 Pickle, 111; *Citizens' R. T.* v. *Scigrest*, 12 Pickle, 124; *Young* v. *Cowden*, 14 Pickle, 581.

It follows that if this verdict of the jury was found upon proper rulings and charge of the Court, it will not be disturbed here.

The second and third assignments of error are substantially based upon the correctness of the first assignment, and are determined by our conclusions as to the first.

The third assignment is that the Court erred in refusing to charge the jury that there was no evidence to show the insolvency of Harris at date of purchase of goods; and it is argued in support of this assignment that such is the practice of the Federal Court, and such ought to be the practice of the State Court. It is sufficient, in reply to this, to say that it is not the practice

of our State, except upon demurrer to evidence, which was not interposed.

The fifth assignment of error was because the Court permitted a witness to testify that Harris had given him an order for goods, which was so much larger than usual, that he had refused to fill it. The objection to this evidence, and its competency, was because it related to a transaction with one not a party to the suit, and because it was not shown the transaction occurred before purchase from plaintiff. This is not well taken. The question was one of fraud, in which great latitude of proof is permitted. This fraud was a scheme in which many creditors were involved, and extending over several months of time in consummation. Besides, the evidence was not of such importance and weight, in itself, as would permit reversal for its wrongful admission.

The judgment is affirmed with costs.