Lois McGill **KEITH**, Plaintiff/Appellee,

v.

**MURFREESBORO LIVESTOCK MARKET, INC., and Carlton Reeves, Defendants/Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 30, 1989.

Permission to Appeal Denied by Supreme Court Nov. 27, 1989.

Rondal Wilson, Shelbyville, for defendants/appellants.

Thomas Reed, Jr., Murfreesboro, for plaintiff/appellee.

## OPINION

KOCH, Judge.

This appeal involves a dispute arising from the sale of cattle through a livestock market in Murfreesboro. The executrix of the cattle owners' estates filed an action in the Circuit Court for Rutherford County alleging that the market's owner committed fraud by replacing her decedents' cattle with inferior stock before they were sold. The jury awarded the estates $3,000 in compensatory and $40,000 in punitive damages, and the livestock market and its owner have appealed. We affirm the judgment.

### I.

James Benton McGill and Gladys McCary McGill owned a farm in the Dilton community in Rutherford County. Mr. McGill raised beef cattle until October 8, 1984, when he and his wife died. The responsibility for administering their estates fell upon their only child, Lois McGill Keith. Mrs. Keith was a school teacher who lived in Franklin with her husband, the Reverend Myron Keith.

The Keiths met Carlton Reeves for the first time on the day of the McGills' funeral. Mr. Reeves owned and operated a sale barn in Rutherford County doing business as the Murfreesboro Livestock Market, Inc. He sought to ingratiate himself with the Keiths by telling them that he had been a close friend of the McGills and that

he had done a great deal of business with Mr. McGill.

During the days following the funeral, Mr. Reeves contacted the Keiths to offer assistance in disposing of the McGills' cattle. On October 18, 1984, he met at the McGills' farm with the Reverend Keith, William McGill, James McGill's brother, and one of James McGill's neighbors. He told the Reverend Keith that his sale barn would be conducting a sale on October 19, 1984, and he recommended that the McGills' best cattle should be sold at his sale barn rather than at the contemplated dispersal sale at the farm. Mr. Reeves explained that the cattle would bring more money that way and even offered to bear the expense of feeding the cattle and of transporting them to the sale.

The Keiths permitted Mr. Reeves to select the cattle from the McGill herd that he thought would bring the best price. Accompanied by William McGill, Mr. Reeves selected fifty-nine of the best cattle, mostly Charolais, including twenty cows, thirty-eight calves, and one bull and hauled them off to his sale barn. He discouraged the Reverend Keith and William McGill from attending the sale, saying "I'll take care of your interest for you. You have a whole lot on you." He promised to mail the proceeds to the Keiths on the day following the sale. Trustingly, neither the Keiths nor any of the McGill family attended the sale.

About a week later the Keiths received a set of checks from the sale barn totaling $12,217.14 which supposedly represented the proceeds from the sale of the McGill cattle. They also received a bill for Mr. Reeves' expenses for picking up the cattle and transporting them to the sale and for their upkeep. Both the Reverend Keith and William McGill were surprised that the check was so small. Mr. McGill, a cattle farmer himself, thought that the cattle Mr. Reeves took from his late brother's farm should have sold for twice what the Keiths received.

The Reverend Keith was so dissatisfied with the amount of money they received that he requested Mr. Reeves to meet with him at a lawyer's office in Franklin to discuss the matter. At the meeting, Mr. Reeves apologetically explained that the McGills' cattle brought a low price because of an unexpected drop in the market and an unanticipated lack of major buyers at the sale.

Though disgruntled, the Keiths let the matter rest. However, in March, 1985, they were contacted by a marketing specialist from the United States Department of Agriculture who had learned of their dissatisfaction with Mr. Reeves during an independent investigation into the sale barn. The Keiths requested the USDA to investigate their dealings with Mr. Reeves as well.

The USDA's investigation revealed numerous discrepancies in the sale barn's records concerning the McGill cattle. The records indicated that Mr. Reeves had replaced many of the McGill cattle prior to the sale with inferior cattle weighing less than the McGill cattle and that the money he sent the Keiths was actually the proceeds from the sale of the substituted cattle. The records also indicated that Mr. Reeves had sold one animal that he had earlier reported dead to a meat processing company. The Keiths later discovered that Mr. Reeves had purchased many of the McGill cattle for himself under other names.

In December, 1985, Mrs. Keith, acting as the executrix of her parents' estates, sued the Murfreesboro Livestock Market, Mr. Reeves, and several other related businesses and individuals alleging breach of fiduciary duty, larceny by trick, engaging in deceptive business practices, and common law fraud. The case went to trial in January, 1988, against Mr. Reeves and the livestock market on the issue of fraud alone. The jury awarded Mrs. Keith $3,000 in compensatory and $40,000 in punitive damages. The trial court entered judgment on the jury's verdict and later denied the appellants' motion for a new trial.

## II.

We turn first to the appellants' challenge to the sufficiency of the proof of

fraud. They contend that Mrs. Keith failed to prove that Mr. Reeves made any false representation of an existing or past fact on which she could have justifiably relied. We disagree. Having reviewed the evidence as required by Tenn.R.App.P. 13(d), we find that the record contains material evidence supporting the jury's conclusion that the appellants committed fraud upon the Keiths.

Tennessee's courts have declined to confine the concept of fraud to a "hidebound definition"[1] because fraudulent conduct assumes a variety of forms. *New York Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513, 523, 292 S.W.2d 749, 754 (1956).[2] Thus, fraud remains a generic term broad enough to encompass

> all acts, omissions, or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.

*Smith v. Harrison*, 49 Tenn. (2 Heisk.) 230, 243–44 (1870); *see also Turley v. Taylor*, 65 Tenn. 376, 386 (1873); 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 873, at 422 (5th ed.1941).

In our time, the concept of fraud protects every person's legitimate expectations that he or she can reasonably rely on the representations of others when making decisions—especially business decisions. *See generally* 2 F. Harper, F. James & O. Gray, *The Law of Torts* § 7.1, at 378 (1986). Thus, the scope of the concept remains flexible,[3] requiring that each case be considered on its particular facts. *See* 37 Am.Jur.2d *Fraud and Deceit* § 1 (1968).

Actions for fraud have four elements: (1) an intentional misrepresentation of a material fact, (2) the wrongdoer's knowledge that the representation is false, and (3) injury caused by the victim's reasonable reliance upon the representation. *Holt v.*

*American Progressive Life Ins. Co.*, 731 S.W.2d 923, 927 (Tenn.Ct.App.1987); *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn.Ct.App.1976). The fourth element requires that the misrepresentation must relate to an existing fact, *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d at 232, or, in the case of promissory fraud, must embody a promise of future action without the present intention to carry out the promise. *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn.Ct.App.1980).

The record contains material evidence that Mr. Reeves made two material misrepresentations to the Keiths. First, Mr. Reeves represented to the Keiths that the $12,217.14 he sent them was the proceeds from the sale of the McGill cattle when he knew that many of the cattle that were sold did not come from the McGill herd. Second, the proximity between Mr. Reeves' conversations with the Keiths and the sale of the cattle, together with his later purchase of some of the cattle for himself, provides material evidence that he never intended to sell the cattle at the livestock market in the manner he promised the Keiths.

Intention to defraud is a question of fact. *Metropolitan Life Ins. Co. v. Hedgepath*, 182 Tenn. 296, 300, 185 S.W.2d 906, 907 (1945); *Mann v. Russey*, 101 Tenn. 596, 599, 49 S.W. 835, 836 (1898). Considering that Mrs. Keith put on evidence from which the jury could reasonably have concluded that Mr. Reeves intended to defraud the Keiths from the very beginning and considering that the trial court's instructions adequately covered all the elements of fraud, we decline to overturn the jury's verdict that Mr. Reeves' conduct was fraudulent.

## III.

The appellants also attack the damage award on two fronts. They insist that Mrs.

---

1. *Pride v. Baker,* 64 S.W. 329, 332 (Tenn.Ch.App. 1901).

2. In his fictional account of his journey through hell, Dante Alighieri personified fraud as Geryon, a mythological beast who had the tail of a scorpion, a whelped body like a reptile, hair covered arms and shoulders, and the face of a just and honest man. *The Divine Comedy,* Cantica I: The Inferno, Canto XVII, lines 7–27.

3. *See* Note, *Promissory Fraud in Tennessee: A Wrong Without a Remedy,* 10 Mem.St.U.L.Rev. 308, 308 (1980).

Keith failed to prove that her parents' estates had been damaged and that the amount of punitive damages is excessive. We disagree.

### A.

■ The party seeking damages has the burden of proving them. *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn.Ct.App.1982). However, in tort cases the proof need not establish the amount of damages with mathematical precision, *Provident Life and Accident Ins. Co. v. Globe Indem. Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057, 1058 (1928), as long as the proof is as certain as the nature of the case permits, and it enables the jury to make a fair and reasonable assessment of the damages. *Wilson v. Farmers Chem. Ass'n, Inc.*, 60 Tenn.App. 102, 111, 444 S.W.2d 185, 189 (1969). Thus, while damages should not be awarded when the existence of damage is uncertain, they may be awarded if the existence of damage is certain, but the extent of damage is not. *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn.Ct.App.1983).

■ Mrs. Keith proved that the appellants' conduct damaged her parents' estates in two ways. First, the estates received less than they should have from the sale of their cattle because the cattle Mr. Reeves substituted weighed less than the McGill cattle. Second, they were never paid for the cow that had allegedly died, even though Mr. Reeves sold it to a meat packer.

The jury determined that the McGill estates' actual damages were $3,000. We have been unsuccessful in reconciling this amount with the proof of damages because, if anything, the proof shows that the actual damages were higher. However, since accounting-like precision is not required when assessing damages, our own review of the record convinces us that the jury's assessment of actual damages was reasonable in light of the proof.

### B.

The appellants argue that punitive damages were improper because Mrs. Keith did not prove actual damages. Sensing the futility of this argument, they also argue that the amount of punitive damages was excessive.

Punitive damages cannot be recovered in the absence of actual damages. *Ball v. Overton Square, Inc.*, 731 S.W.2d 536, 539 (Tenn.Ct.App.1987); *Cullum & Maxey Camping Center, Inc. v. Adams*, 640 S.W.2d 22, 26 (Tenn.Ct.App.1982). Since we have determined that Mrs. Keith proved actual damages, we find the appellants' argument based on the lack of proof of actual damages to be without merit.

Punitive damages are designed to punish a defendant and, thereby, to deter the defendant and others from committing similar acts in the future. *Huckeby v. Spangler*, 563 S.W.2d 555, 558–59 (Tenn.1978); *Breault v. Friedli*, 610 S.W.2d 134, 136 (Tenn.Ct.App.1980). While awarding punitive damages is the jury's prerogative, *Louisville & N. R.R. v. Satterwhite*, 112 Tenn. 185, 209, 79 S.W. 106, 112 (1904), the jury's decision is not beyond judicial review.

■ The amount of punitive damages depends upon the circumstances of the case, *Loope v. Goodings Million Dollar Midways, Inc.*, 553 S.W.2d 573, 575 (Tenn. 1977), not merely upon the nature or extent of the plaintiff's injury. *Lazenby v. Universal Underwriters Ins. Co.*, 214 Tenn. 639, 646, 383 S.W.2d 1, 4 (1964). A punitive damage award should not be "grossly excessive," the "result of passion, prejudice, improper sympathy," or based upon some other reason appearing to "constitute an injustice." *Coppinger Color Lab, Inc. v. Nixon*, 698 S.W.2d 72, 75 (Tenn.1985). The Tennessee Supreme Court has described the factors to be considered in reviewing a punitive damage award as follows:

> The factors to be considered in assessing the award include the nature of the defendant's acts, the amount of the compensatory damages awarded and the wealth of the particular defendant. The more reprehensible the act, the greater

the appropriate award of punitive damages.

*Coppinger Color Lab, Inc. v. Nixon,* 698 S.W.2d at 75.

■ We have reviewed the record and find nothing inflammatory or unduly prejudicial in trial counsels' opening arguments, in their examination of the witnesses, in their remarks to the trial court, or in their closing arguments. Likewise, we find nothing improper or inflammatory in the conduct of the trial or in the trial court's remarks. In short, we can find nothing to indicate that the jury's verdict was caused by passion, prejudice, caprice or any other motive that would constitute an injustice. Therefore, like the trial court, we decline to tamper with the jury's punitive damage award.[4]

### IV.

The appellants also take issue with Mrs. Keith's introduction of evidence concerning an unrelated transaction at the sale barn that occurred ten months before the sale of the McGill cattle. While we have determined that the evidence should not have been admitted, we have also determined that its introduction did not affect the judgment.

### A.

In December, 1983, Kendle Davidson consigned sixty-eight head of cattle to Mr. Reeves' sale barn. Trusting Mr. Reeves to look out for his interests, he did not attend the sale. The cattle brought less than he expected, and when he complained, Mr. Reeves promised to "make it right" by sending him replacement cattle. The replacements were not satisfactory to Mr. Davidson, and so Mr. Reeves decided to sell them and pay Mr. Davidson the proceeds in settlement. Mr. Davidson did not accept this alternative either because he stood to receive only half of what he thought his cattle were worth. It later came to light that Mr. Reeves had actually bought Mr. Davidson's cattle and had put them on his own farm.

Mrs. Keith brought up the Davidson transaction three times during her case-in-chief. It was touched upon obliquely during Mr. Reeves' testimony as a plaintiff's witness when he was asked whether he had ever purchased cattle for himself during sales at the sale barn. It was mentioned again when the USDA market specialist explained why she was investigating Mr. Reeves. Finally, Mrs. Keith's counsel called Mr. Davidson himself, apparently to prove that Mr. Reeves bought cattle at the sale barn.[5] Over the appellants' objections, Mr. Davidson testified concerning his transaction with Mr. Reeves, omitting only references to the existence and outcome of his lawsuit against Mr. Reeves.[6]

### B.

Each case should be decided upon the evidence particularly applicable to it. *Benson v. Fowler,* 43 Tenn.App. 147, 168, 306 S.W.2d 49, 59 (1957); *Lewisburg & N. Ry. v. Minton,* 7 Tenn.Civ.App. 71, 84 (1916). Thus, as a general rule, courts should decline to admit evidence of extrinsic transactions having no connection with the transaction giving rise to the lawsuit. *Dark Tobacco Growers' Co-op Ass'n v. Mason,* 150 Tenn. 228, 254, 263 S.W. 60, 68 (1924) (independent representations to non-parties); *Franklin v. Franklin,* 90 Tenn. 44, 48–49, 16 S.W. 557, 558 (1891) (other forgeries); *Massengill v. Shadden,* 48 Tenn.

---

**4.** In his trial practice handbook, Judge Robert E. Burch comments upon the "penchant of the appellate courts to substitute their own standard of reasonableness for that of the jury, in spite of pronouncements to the contrary." R. Burch, *Trial Handbook for Tennessee Lawyers* § 431 (1980). We choose to adhere to our "pronouncements" in this case.

**5.** While Mrs. Keith's lawyer never clearly explained the reason for Mr. Davidson's testimony or the basis of its admissibility, he stated at one point that he "was going to try to show that Mr. Davidson consigned his cows, was disappointed. The investigation was made and he then learned that the real buyer was Carlton Reeves."

**6.** The trial court apparently excluded references to Mr. Davidson's lawsuit against Mr. Reeves during a pretrial conference.

(1 Heisk.) 357, 358 (1870) (separate acts of trespass).

■ There are, of course, exceptions to the general rule. Evidence concerning unrelated transactions may be used to show matters such as knowledge, absence of mistake or accident, fraudulent intent, or the existence of a common scheme or plan. *Lackey v. Metropolitan Life Ins. Co.*, 30 Tenn.App. 390, 402–03, 206 S.W.2d 806, 812 (1947); *Schoolfield v. Bean*, 26 Tenn.App. 30, 58, 167 S.W.2d 359, 370 (1942); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 197 (3d ed.1984); 2 J. Wigmore, *Evidence in Trials at Common Law* § 321 (Chadbourn rev.1979).

■ Mrs. Keith did not use the Davidson transaction to prove any of the matters covered by the exception to the general rule. Instead, she used the evidence to show that Mr. Reeves made a practice of buying cattle for himself at his own sales. While a party's method of conducting business may become relevant and material in an action arising out of the business, such evidence is disfavored, and to be admissible, its relevance and probative value must clearly appear. *Middle Tennessee Elec. Membership Corp. v. Barrett*, 56 Tenn. App. 660, 668–69, 410 S.W.2d 914, 918 (1966).

For proof of an extrinsic transaction to be admissible, it must be relevant to some disputed, material issue, *see Bunch v. State*, 605 S.W.2d 227, 229–30 (Tenn.1980); *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 642 S.W.2d 151, 152 (Tenn.Ct.App.1982); *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 835–36 (Tenn.Ct.App.1980); E. Cleary, *McCormick on Evidence* § 185, at 541 (3d ed.1984), and it must bear some similarity to the transaction at issue. *Summers v. Howland*, 61 Tenn. 407, 409 (1873); *Armstrong v. Bowman*, 21 Tenn.App. 673, 682, 115 S.W.2d 229, 234 (1937); 2 J. Wigmore, *Evidence in Trials at Common Law* § 304 (Chadbourn rev.1979).

Fraud, by its very nature, is difficult to prove, *Parrott v. Parrott*, 48 Tenn. (1 Heisk.) 681, 687 (1870), and courts give the parties wide latitude in the proof in fraud cases. *Katzenberger v. Leedom & Co.*, 103 Tenn. 144, 154, 52 S.W. 35, 37 (1899). Accordingly, fraud and fraudulent intent can be proved both by direct evidence and by evidence of the circumstances surrounding the transaction at issue. *Richardson v. Vick*, 125 Tenn. 532, 541–43, 145 S.W. 174, 176 (1910); *Jones v. Seal*, 56 Tenn.App. 593, 598, 409 S.W.2d 382, 385 (1966). However, in order to be relevant, the circumstances sought to be proved must be connected to and consistent with the transaction at issue. *White v. Bettis & Capps*, 56 Tenn. (9 Heisk.) 645, 651 (1872).

With due deference to the trial court's discretion concerning the admission of evidence,[7] we disagree with its decision to admit Mr. Davidson's testimony concerning his dealings with Mr. Reeves. We base our decision on two considerations. First, Mrs. Keith did not need additional proof of Mr. Reeves' practice of buying cattle at his sale barn because Mr. Reeves had already admitted that he did. Mr. Reeves testified not only that he bought cattle to "support the market," but also that he bought some of the McGill cattle. Second, Mrs. Keith failed to establish any material similarities between the Davidson transaction and the Keith transaction other than that the sellers were dissatisfied and that Mr. Reeves bought some of the sellers' cattle himself. She provided no proof that Mr. Reeves switched Mr. Davidson's cattle or that he altered the pen sheets or that he manipulated the cattles' back tag numbers.

Mrs. Keith failed to demonstrate that the Davidson transaction and the Keith transaction were part of a common scheme or plan or that switching cattle was one of Mr. Reeves' standard business practices. Accordingly, we find no basis for the admission of Mr. Davidson's testimony.

### C.

■ Finding that Mr. Davidson's testimony was inadmissible does not end our

7. *Royal v. Days Inns of America, Inc.*, 708 S.W.2d 411, 414 (Tenn.Ct.App.1985); *Inman v.*

*Aluminum Co. of America*, 697 S.W.2d 350, 354 (Tenn.Ct.App.1985).

inquiry. Tenn.R.App.P. 36(b) provides that a final judgment should not be set aside unless, "considering the whole record, error involving a substantial right more probably than not affected the judgment." Thus, we must determine whether the erroneous admission of Mr. Davidson's testimony more probably than not affected the judgment.

The improper admission of evidence is not grounds for reversal unless "it shall affirmatively appear that the alleged error affected the result of the trial." *State v. Horne,* 652 S.W.2d 916, 919 (Tenn.Crim. App.1983). Whether it is sufficiently prejudicial to require reversal depends on the substance of the evidence, its relation to the other evidence, and the peculiar facts and circumstances of the case. *Wheeler v. State,* 539 S.W.2d 812, 814 (Tenn.Crim.App. 1976).

If the record contained no other competent evidence tending to show fraud against Mrs. Keith, we would be inclined to find that Mr. Davidson's testimony more probably than not affected the judgment. However, the jury heard and the record contains substantial evidence of Mr. Reeves' fraudulent conduct.

Only a small portion of Mr. Reeves' testimony involves his dealings with Mr. Davidson. The parties introduced over fifty documentary exhibits at trial, some lengthy, none of which were tainted with information concerning the Davidson transaction. Neither party mentioned the Davidson affair in their opening or closing arguments, and the trial court in no way invited the jury to consider it. When we consider the aggregate of the proof offered, we cannot say that the jury turned aside from the great amount of competent evidence and let its verdict be dictated by a side story.

## V.

■■■ As part of her proof relating to punitive damages, Mrs. Keith introduced a copy of a financial report the sale barn prepared and filed with the USDA's Packers & Stockyards Administration. This government form showed that the sale barn's assets in 1985 totalled $936,058.57.

Mr. Reeves objected to this evidence at trial on the grounds that it was "irrelevant." On appeal, he also asserts that it should not have been admitted because it was an unauthenticated copy.

Proof concerning the sale barn's assets was certainly relevant because a defendant's financial condition may be considered in awarding punitive damages. *Coppinger Color Lab, Inc. v. Nixon,* 698 S.W.2d at 75; *Breault v. Friedli,* 610 S.W.2d 134, 136 (Tenn.Ct.App.1980). While a defendant's financial statements are not required, *Anderson v. Latham Trucking Co.,* 728 S.W.2d 752, 754 (Tenn.1987), they may be shown to the jury when punitive damages are an issue. *Donnell v. Donnell,* 220 Tenn. 169, 185–86, 415 S.W.2d 127, 135 (1967).

An objection to evidence's admissibility must be specific, and any grounds for objection not raised are waived. *Crane v. State,* 94 Tenn. 86, 89, 28 S.W. 317, 318 (1894); *Rush v. Rush,* 33 Tenn.App. 496, 502, 232 S.W.2d 333, 336 (1949). Indeed,

> [a]ny other rule would result in setting a trap for the other side of the controversy. When objection is made to evidence, and specified, this notification may enable opposing counsel to obviate it, and thus make the evidence competent, but, if the party making an erroneous objection should be allowed to withhold a good objection and make that in the appellate court, where there can be no possibility of avoiding the difficulty by other evidence, this would give a very great advantage to the party so withholding his real objection, and result in corresponding disadvantage and injustice to the opposing litigant.

*Middle Tennessee R.R. v. McMillan,* 134 Tenn. 490, 508, 184 S.W. 20, 24 (1916). Since Mr. Reeves made only a relevancy objection to the introduction of the copy of his sale barn's financial report, his other objections will not be considered for the first time on appeal.

## VI.

■■■ Finally, Mr. Reeves and the sale barn take issue with the form provided to

the jury for reporting its verdict. Despite having the opportunity, they did not object to the form when the trial court gave it to the jury and did not include the issue in their motion for a new trial. We find that the appellants have waived their objections to the verdict form used by the jury because of their failure to raise them in a timely manner.

Counsel should object promptly to a proposed verdict form. If possible, they should object to the form before its submission to the jury. However, if unaware of the form's substance, they should object before the jury returns its verdict. *Savina v. Wisconsin Gas Co.*, 36 Wis.2d 694, 154 N.W.2d 237, 240 (1967). Failure to make a timely objection to a verdict form constitutes a waiver of the objection. *Frith v. Lambdin*, 703 S.W.2d 890, 893 (Ky.Ct.App. 1986); *Estate of Hartz v. Nelson*, 437 N.W.2d 749, 752 (Minn.Ct.App.1989); *Reed v. Sale Memorial Hosp. & Clinic*, 741 S.W.2d 819, 824 (Mo.Ct.App.1987); *Goggins v. Harwood*, 704 P.2d 1282, 1289 (Wyo. 1985).

### VII.

We affirm the jury's verdict and remand this case to the trial court for the entry of appropriate orders to carry out its judgment. We tax the costs of this appeal jointly to Carlton Reeves and the Murfreesboro Livestock Market, Inc. and their surety for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.