# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 7, 2017 Session

## TULLAHOMA INDUSTRIES, LLC v. NAVAJO AIR, LLC, ET AL.

**Appeal from the Chancery Court for Franklin County**
**No. 19758    Jeffrey F. Stewart, Chancellor**

_____

### No. M2017-00109-COA-R3-CV

_____

A manufacturer of military uniforms entered into an agreement with its supplier of fabric and the manufacturer's bank whereby the bank would disburse funds from the manufacturer's account to pay invoices for fabric the supplier shipped to the manufacturer. After several months, the supplier learned that the process for paying the invoices was not being followed and sent the bank the unpaid invoices directly and demanded payment. The manufacturer filed a declaratory judgment action, naming the supplier and the bank as defendants, and asked the court to determine the "rights, status or other legal relations" under the agreement. The supplier filed a crossclaim against the bank, asserting claims for breach of the disbursement agreement, breach of duty of good faith and fair dealing, violation of Tennessee Consumer Protection Act ("TCPA"), fraud in the inducement of contracting, and civil conspiracy to commit fraud in the inducement. The court granted summary judgment to the bank on all of the supplier's claims except the civil conspiracy claim; the supplier appeals. Upon a thorough review of the record, we reverse the judgment of the trial court and remand the case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Andrew T. Wampler, Rebecca J. Ketchie, and Robert L. Arrington, Kingsport, Tennessee, for the appellant, Navajo Air, LLC.

James D. Lane and William C. Reider, Tullahoma, Tennessee, for the appellees, Citizens Community Bank.

Clifton George Caudle, Chattanooga, Tennessee, for the appellees, Richard Davenport and Tullahoma Industries, LLC.

OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

This case stems from a business relationship between Navajo Air, LLC ("Navajo"), a fabric supplier, and Tullahoma Industries ("TI"). From 2012 to 2013, Navajo sold and shipped fabrics to Tullahoma, which used Navajo's product to manufacture military uniforms under a contract with the Department of Defense. After Tullahoma failed to pay several of Navajo's invoices, Navajo stopped shipping to TI; Navajo required an agreement with a third-party to ensure payment before shipping any more fabric to TI. Accordingly, Navajo and TI entered into disbursement agreement with Community Citizens Bank ("the Bank") for the Bank to perform this third-party role. The three parties signed a disbursement agreement, effective September 13, 2013 (hereinafter referred to as "September 13 Agreement"), in which their respective responsibilities were identified:

> 3. [TI] and [Navajo] will mutually agree upon the distribution of the available payment for each invoice on the contract received by [the Bank] and provide [the Bank] a written statement in the form of the [vendor form] to be submitted with each invoice in form and substance substantially similar to Exhibit A hereto providing what percentage of the invoice [the Bank] is to be made to [Navajo] and [TI] respectively. Each [vendor form] must be signed off on by both the [TI] and the [Navajo] for every invoice (whether or not there is a portion to be paid to the [Navajo]).

Attached to the September 13 Agreement were two fully executed Vendor Payment Calculation forms ("vendor forms") that applied to TI invoices, dated September 5 and September 10. All later vendor forms were filled out exactly as these.

After the parties signed the September 13 Agreement, the Bank disbursed payment for the two vendor forms attached to the agreement, and Navajo resumed shipments to TI. With each shipment, Navajo included a filled-out vendor form for that shipment and a copy of the disbursement agreement, with the assumption that TI would execute and forward the documents to the Bank for payment.[1] During November and December of 2013, TI instructed the Bank to make wire transfers to Navajo from TI's account, but no vendor forms or disbursement agreements were provided to the Bank. Navajo received payments by wire transfer on November 1, 2013; December 2, 2013; December 13, 2013; and December 26, 2013.

---

[1] The copy of the disbursement agreement sent with each shipment was identical to the September 13 Agreement, except the signature page was not dated or fully executed.

In January 2014, Navajo contacted the Bank to determine why the payments had stopped and learned that the Bank had not received any vendor forms or disbursement agreements subsequent to the execution of the September 13 Agreement. Navajo then sent the Bank a package of the unpaid vendor forms, which were dated from October 14, 2013 to January, 14, 2014, and the accompanying disbursement agreements[2] and requested payment of the vendor forms; the Bank received this package on January 23, 2014. There were no funds in TI's general operating account with the Bank on January 23. On January 24, the Bank sent a letter to Navajo terminating the disbursement agreement; on that day, TI's general operating account had a positive balance of $13,920.01, but the source of the funds was not known to the Bank.

On February 11, 2014, TI filed this declaratory judgment action, naming Navajo and the Bank as defendants, and requesting in pertinent part, a "[determination of] the construction of the Disbursement Agreement entered into by and between [TI], [the Bank], and [Navajo]," and "a declaration of [the Bank's] and [TI's] rights, status or other legal relations under such Disbursement Agreement."[3]

Navajo answered and filed a counterclaim against TI and Richard Davenport, CEO of TI, for breach of contract for sale of goods, breach of the disbursement agreement, fraud in the inducement, fraud, and unjust enrichment. In due course, Navajo filed a motion for summary judgment and the court awarded summary judgment to Navajo in the amount of $740,901.07 and $71,333.00 in prejudgment interest on its claims for breach of contract for the sale of goods.

Navajo also filed a cross-claim against the Bank, the disposition of which is the subject of this appeal. In its cross-claim, as amended, Navajo asserted claims for breach of the disbursement agreement, breach of duty of good faith and fair dealing, violation of Tennessee Consumer Protection Act ("TCPA"), fraud in the inducement of contracting, and civil conspiracy to commit fraud in the inducement.

Navajo and the Bank each filed motions for summary judgment on Navajo's cross-claim. In its motion,[4] Navajo argued it was entitled to judgment as a matter of law on its

---

[2] At the hearing on the motions for summary judgment, counsel for the Bank, Navajo, and Tullahoma submitted several disbursement agreements with accompanying vendor forms and copies of Navajo invoices directed to Tullahoma as a joint, undisputed, and stipulated exhibit. However, it is unclear from the record how many and which invoices were included in the package received by the Bank on January 23.

[3] Tullahoma's initial complaint also named Euler Hermes Collections North America Company, Navajo's business insurer; Tullahoma later nonsuited its claim against that party.

[4] In support of its motion for summary judgment, Navajo filed a statement of undisputed facts; a response to the Bank's statement of undisputed facts; and a statement of additional material facts; the depositions of James R. Wheeling, Navajo's second expert witness; Marie L. Appleby Breimann, Navajo's third

claim for breach of the disbursement agreement because the Bank did not pay Navajo according to the terms of the disbursement agreement. In its motion,[5] the Bank sought summary judgment of all Navajo's claims against it. The Bank argued it was entitled to judgment as a matter of law on Navajo's claim for breach of contract, because there was no enforceable contract in existence between Navajo and the Bank, that there was no non-performance amounting to a breach, and that the Bank did not have a duty to reserve money to pay Navajo. With respect to Navajo's claim that the Bank breached its duty of good faith and fair dealing, the Bank argued that there was no duty because there was no enforceable contract existing at the time of the alleged breach and because the September 13 Agreement excluded implied covenants; the Bank argued further that, even if there were a duty, it was not breached. With respect to Navajo's claim that the Bank violated the TCPA, the Bank argued that Navajo was not a consumer within the meaning of the Act, and that the Bank did not engage in any unfair or deceptive practice. As to Navajo's fraud in the inducement claim, the Bank argued it made no statement at all to Navajo, and thus, made no false statement. To Navajo's civil conspiracy to commit fraud in the inducement claim, the Bank argued that the Bank and TI never engaged in a common design to induce Navajo to enter the disbursement agreement.

Following a hearing on the motions, the court entered an order, which incorporated the findings of fact and conclusions of law it stated at the end of the hearing; the court granted summary judgment to the Bank on Navajo's claims for breach of contract, breach of duty of good faith or fair dealing, violation of TCPA, and fraud in the inducement. The court denied Navajo's motion for summary judgment on its breach of contract claim and allowed the case to proceed on Navajo's claim for civil conspiracy. The court certified the order as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, and Navajo appealed.

## II. ANALYSIS

This court reviews a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye v.*

---

expert witness; and Charles Gleghorn, the Bank's expert witness; and the affidavit and amended affidavit of Shulie Klein, an employee of Navajo.

[5] In support of its motion, the Bank filed a statement of undisputed facts, a response in opposition to Navajo's cross-motion, a response to Navajo's statement of undisputed facts, and a response to Navajo's statement of additional undisputed facts. The Bank also filed supporting depositions of Dennis Walker, the Bank's President and CEO; Stacy Edwards, the Bank's Vice President; Richard Davenport, Tullahoma's CEO; Ernest Chornyei, Navajo's CEO; Ruth Ganister, one of Navajo's three expert witnesses; and supporting affidavits of Mr. Walker and Mr. Davenport.

4

*Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial." *Rye*, 477 S.W.3d at 264-65.

### A. Breach of Contract

#### 1. *Enforceability of Disbursement Agreement*

The first and second issues[6] raised by Navajo are predicated upon the trial court's holding that no enforceable contract existed on the date the vendor forms were received by the Bank. Consequently, we first address the enforceability of the disbursement agreement

The parties agree that the trial court based its ruling that there was no contract in effect when the Bank received the package on January 23, 2014, on its determination that the disbursement agreements that were executed after the September 13 Agreement and sent with Navajo's shipments to TI superseded that agreement, and since the subsequent agreements were not signed by all parties, the Bank had no obligation to Navajo. Navajo asserts that the disbursement agreement was enforceable at the time the Bank received the vendor forms because an agreement between three parties cannot be superseded or terminated by subsequent duplicate copies of the agreement executed by only two of the parties. The Bank contends that the trial court did not err because the subsequent agreements terminated and superseded the original agreement and were not accepted, signed, or agreed to by the Bank; consequently, neither the September 13 Agreement, nor the disbursement agreement copies imposed any contractual obligations on the Bank at the time the vendor forms were received.

---

[6] The first and second issues raised by Navajo are as follows:

1. Whether the Trial Court erred in finding that subsequent duplicate copies of a three-party agreement signed by only two of the parties (and not the party alleged to be in breach of the agreement) superseded and terminated the original contract signed by all three parties.

2. Whether the Trial Court erred in denying Navajo's motion for summary judgment and granting the Bank's motion for summary judgment on Navajo's breach of contract claims based on the Trial Court's incorrect conclusion that a contract did not exist at the time the Bank received Vendor Payment Calculation Forms.

Navajo contends that, in its ruling, the court effectively–and erroneously–applied the doctrine of merger to this claim. In *Great American Insurance Company v. Nelson, Inc.*, this Court summarized the pertinent aspects of this doctrine as follows:

> The merger doctrine is well-established in Tennessee; the doctrine puts structure to ascertaining the parties' intent where there are successive agreements. Synthesizing the holdings in Tennessee caselaw, the merger doctrine has been summarized as follows: "Under the doctrine of merger, parties to a contract may enter into a subsequent agreement concerning the same subject matter as the prior one; the earlier contract ... merges into the latter contract, and is rescinded or extinguished." For merger to apply, the successive contracts must have the same parties, and they generally "must contain inconsistent terms such that they cannot stand together as supplemental agreements. Under these circumstances, the "subsequent contract then stands as the only contract between parties."

276 F.Supp.3d 762, 768 (W.D. Tenn. 2017) (quoting *Shree Krishna, LLC v. Broadmoor Inv. Corp.*, No. W2011-00514-COA-R3-CV, 2012 WL 312254, at *14 (Tenn. Ct. App. Feb. 1, 2012)) (internal citations omitted).

On the record presented, the doctrine of merger does not apply. There were no changes to the terms of the disbursement agreement, simply different dates when the succeeding shipments were made and vendor forms provided; the change in dates does not constitute "inconsistent terms such that [the agreements] cannot stand together as supplemental agreements." *See id*. Moreover, Tennessee's merger doctrine requires the last agreement be "signed by all parties" to supersede the former agreements. *Magnolia Group v. Metropolitan Dev. and Hous. Agency*, 783 S.W.2d 563, 566 (Tenn. Ct. App. 1989). Here, the disbursement agreement copies have only two—and in two cases, only one—of the three parties' signatures; as such, they cannot supersede the September 13 Agreement.[7]

---

[7] The parties stipulated that the following vendor forms were received in the January 23 package and were not paid by the Bank:

> a. Invoice #14970, dated October 17, 2013, for $63,944.50.
> b. Invoice #14981, dated October 24, 2013, for $37,551.55.
> c. Invoice #14997, dated November 11, 2013, for $82,266.35.
> d. Invoice #14999, dated November 13, 2013, for $84,392.80.
> e. Invoice #15021, dated December 3, 2013, for $79,489.30.
> f. Invoice #15044, dated December 30, 2013, for $71,691.50.
> g. Invoice #15053, dated January 6, 2014, for $15,595.60.
> h. Invoice #15054, dated January 6, 2014, for $50,819.05.
> i. Invoice #15066, dated January 14, 2014, for $79,413.10.

Moreover, Tennessee's rule allowing subsequent agreements to supersede "applies only when the substituted contract is a valid one." *Empiregas Inc. of Ardmore v. Hardy*, No. 86-44-II, 1987 WL 7012, at *2 (Tenn. Ct. App. Feb. 27, 1987). The Bank did not consent to or sign the subsequent agreements. Each disbursement agreement provides that "This Agreement shall commence upon the final acceptance of this Agreement by CCB." In not signing the subsequent disbursement agreements, the Bank did not "accept" them.

Ultimately, the issue of whether the subsequent disbursement agreements are valid is inconsequential: if the subsequent agreements were valid, they constituted an enforceable contract; if the subsequent agreements were not, the original agreement was an enforceable contract that was not superseded. In either case, the trial court erred in dismissing Navajo's breach of contract claim on the ground that there was not an enforceable contract between Navajo and the Bank.

### 2. *Breach of Express Terms of the Disbursement Agreement and Breach of Duty of Good Faith and Fair Dealing*

After finding there was no enforceable contract, the court granted summary judgment to the Bank on Navajo's claims for breach of the express terms of the disbursement agreement and breach of duty of good faith and fair dealing. In accordance with our holding that there was an enforceable contract, we vacate the court's order in these respects.

### 3. *Damages Caused by Breach*

Finally, Navajo argues that it is entitled to prejudgment interest and consequential damages for TI's nonpayment for fabric delivered.

The proper measure of damages is a question of law, whereas the amount of damages awarded is a factual determination. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005). In a breach of contract action, the purpose of assessing damages is "to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Id.* (quoting *Wilhite v Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990)). However, "the nonbreaching party is not to be put in any better position by recovery of damages for the breach of the contract than he would have been if the contract had been fully performed." *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993).

---

Each invoice contained an accompanying copy of the disbursement agreement that was identical to the September 13 Agreement, except in two respects: the date was updated and the signature block was blank. Navajo signed each disbursement agreement before sending it to Tullahoma, which signed all but two.

By holding that there was no enforceable contract, the trial court did not reach this issue; in light of our disposition of the appeal, the question of the nature and amount of damages are to be determined in further proceedings.

**B. Violation of TCPA**

Navajo contends that the court erred in granting the Bank's motion for summary judgment dismissing Navajo's claims for violation of the Tennessee Consumer Protection Act and fraud in the inducement.

In its amended complaint, Navajo alleged that the Bank "engaged in unfair or deceptive practices by entering the Disbursement Agreement in order to induce Navajo Air to deliver goods to TI and continuing to give TI unilateral control of the disbursement of funds in violation of its obligations and representations related to the arrangement for payment" and requested "treble damages pursuant to T.C.A. § 47-18-109(a)(3), or, in the alternative, punitive damages, and attorney's fees pursuant to T.C.A. § 47-18-109(e)(1)."

The trial court granted summary judgment to the Bank on this claim, stating only that Navajo "[did] not meet the definition of consumer under [the TCPA]"; the court did not analyze the facts of Navajo's claim. Navajo contends the TCPA applies to the relationship between Navajo and the Bank because the relevant law does not require Navajo to be a consumer to assert a claim under TCPA.

Tennessee Code Annotated section 47-18-109(a)(1) provides:

Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

The Tennessee Supreme Court has expressly held that "corporations (and other entities included within the Act's definition of a 'person') have standing to bring a private cause of action for treble damages under the Tennessee Consumer Protection Act." *ATS Southeast, Inc. v. Carrier Corp.,* 18 S.W.3d 626, 630 (Tenn. 2000).[8] Navajo was entitled to seek relief under Section 47-18-109(a)(1), and the court erred in dismissing the claim on the ground that Navajo did not fulfill the statutory definition of a consumer.

---

[8] Tennessee Code Annotated section 47-18-103(13) defines "person" as "a natural person, individual, governmental agency, partnership, corporation, trust, estate, incorporated or unincorporated association, and any other legal or commercial entity however organized."

## C. Fraud in the Inducement

We next consider Navajo's argument that the court erred in dismissing Navajo's claims for fraud in the inducement.

To sustain a claim of fraudulent inducement to contract, which is sometimes called promissory fraud, the claimant must establish five elements:

> [The] proponent of the contract (1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) that the statement was reasonably relied upon, and (5) that an injury resulted from this reliance.

*Regions Bank v. Bric Constructors, LLC*, 380 S.W.3d 740, 763 (Tenn. Ct. App. 2011) (citing *Lamb v. MegaFlight*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000)).

In its amended cross-claim against the Bank, Navajo alleged the following in support of its claim of fraud in the inducement:

> 43. Citizens Community Bank represented that it would disburse funds to Navajo Air upon receipt of a written statement in the form of the Vendor Payment Calculation in form and substance substantially similar to Exhibit A to the Disbursement Agreement and signed by Navajo Air and Tullahoma.
> 44. Citizens Community Bank knew or should have known when it entered the Disbursement Agreement that it would not honor written statements in the form of the Vendor Payment Calculation in form and substance substantially similar to Exhibit A to the Disbursement Agreement and signed by Navajo Air and Tullahoma.
> 45. Citizens Community Bank knew or should have known when it entered the Disbursement Agreement that it would seek unilateral instructions from Tullahoma before disbursing any funds to Navajo Air.
> 46. Citizens Community Bank's representation that it would disburse funds to Navajo Air upon receipt of a written statement in the form of the Vendor Payment Calculation in form and substance substantially similar to Exhibit A to the Disbursement Agreement and signed by Navajo Air and Tullahoma was intended to induce Navajo Air to resume shipping fabric to Tullahoma Industries.
> 47. Navajo Air reasonably relied on Citizens Community Bank's representation, and did in fact resume shipping fabric to Tullahoma, and continued to do so until it discovered that Citizens Community Bank had not been honoring the Disbursement Agreement and had no intention to do so.

9

48. Navajo Air was induced to approve of the proposed arrangement and enter into the Disbursement Agreement by Citizens Community Bank's involvement and willingness to ensure payment.

49. Navajo Air was harmed by its reliance on Citizens Community Bank's representations when it shipped $946,147.85 worth of goods to Tullahoma without any payment arrangement that would protect it, and was in fact not paid for $581,661.45 worth of those goods.

The trial court granted summary judgment on this claim, holding:

[T]he statements made in the deposition by Mr. Chornyei [Navajo's CEO] . . . for Navajo Air that he never had any dealings directly with the bank and, therefore, there could be no representations made by them to him of which would be the inducement responsibility.

The holding addressed the first element of a claim for fraudulent inducement; the court did not opine as to any of the other elements of a claim of fraudulent inducement. Navajo contends that this holding was error and asserts that the disbursement agreement itself satisfies the "false statement" element of a fraudulent inducement claim: in executing the contract, the Bank made a false statement by "[representing] to Navajo that [the Bank] would be responsible for paying the amounts on vendor forms out of available Tullahoma funds." According to Navajo's brief, that act was the inducement "that led Navajo to ship additional fabric and to be damaged by Tullahoma's failure to pay, and Bank's failure to disburse funds."

"Tennessee's courts have declined to confine the concept of fraud to a 'hidebound definition' because fraudulent conduct assumes a variety of forms." *Keith v. Murfreesboro Livestock Market, Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989) (citing *New York Life Ins. Co. v. Nashville Trust Co.*, 292 S.W.2d 749, 754 (Tenn. 1956)) (footnote omitted). At a minimum, the false statement element of a fraudulent inducement claim "must embody a promise of future action without the present intention to carry out the promise." *Keith,* 292 S.W.2d at 754 (citing *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980)). The broad range and flexible scope of fraud thus requires "that each case be considered on its particular facts." *Keith,* 292 S.W.2d at 754. As a result of this attention to the contours and nuances of each individual claim, "it is rare for summary judgment to be appropriate when considering an issue of fraud." *Efird v. Clinic of Plastic and Reconstructive Surgery, P.A.,* 147 S.W.3d 208, 222 (Tenn. Ct. App. 2003).

Under the facts presented, we do not deem that the absence of direct communication between Navajo and the Bank is fatal to this cause of action. It is Navajo's contention, supported by the evidence, that it was induced to enter into the disbursement agreement by the Bank's representation in the agreement that the Bank would process payment of Navajo's vendor forms from TI's account. The Bank's

agreement in this regard is "a promise of future action" and, along with other facts which are at issue, including those pertinent to Navajo's civil conspiracy claim which was allowed to proceed to trial, calls into question the Bank's intention to carry out its promises, and thereby militate against a determination that the Bank was entitled to summary judgment.[9] Considering the summary judgment motion *de novo* and resolving all reasonable inferences in Navajo's favor and discarding all countervailing evidence, we hold that summary judgment on this claim was not appropriate. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692,695 (Tenn. 2002).

## III. CONCLUSION

For the foregoing reasons, we reverse the grant of summary judgment to the Bank. We remand the case for proceedings consistent with this opinion and the judgment filed herewith.

_____

RICHARD H. DINKINS, JUDGE

---

[9] Navaho filed a Statement of Additional Facts in response to the Bank's motion; the Bank did not dispute the following facts:

- Given the previously rocky history T.I. had in paying invoices, Navajo required an agreement with a third-party that ensured it got paid before it would ship any more goods to T.I.
- The Bank knew that T.I. was in financial distress.
- When T.I.'s CEO Richard Davenport presented a Disbursement Agreement to the Bank, Dennis Walker asked no questions about how it would work or what the Bank was being asked to do. He simply stated, "If this is something that will help you out and there's no liability to the bank, we"re glad to do it."
- The Bank had no policies or procedures to ensure the Agreement would be followed, nor did it adopt any when it decided to enter the Agreement.
- The Bank had no prior experience with performing similar agreements when it agreed to execute three disbursement agreements with T.I. and T.I. vendors, including Navajo.
- The Bank did not seek any advice or counsel on what the Agreement meant, how it should be performed, or what safeguards should be in place